22773

The STATE, Respondent v. Larry Gene BELL, Appellant.

(360 S. E. (2d) 706)

Supreme Court

*Jack B. Swerling* and *Elizabeth O. Levy* of *Swerling and Harpootlian, South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Norman Mark Rapoport,* Columbia, *Solicitor Donald V. Myers,* Lexington, *for respondent.*

Heard June 9, 1987.

Decided Aug. 24, 1987.

NESS, Chief Justice:

Appellant was convicted of murder and kidnapping arising out of the death of Sharon Faye "Shari" Smith. He was sentenced to death upon recommendation of a jury. This appeal combines his direct appeal and our mandatory review of his death sentence pursuant to S. C. Code Ann. § 16-3-25 (1985). We affirm the conviction and sentence.[1]

On May 31, 1985, 17-year-old Shari Smith was abducted from the driveway of her Lexington County home. On June 3rd, while Shari was still missing, her family received the first of a series of anonymous telephone calls from the abductor. In the first call, the caller told the family they

---

[1] This opinion also addresses appellant's appeal from a pretrial contempt sentence imposed by Judge Long arising out of appellant's refusal to provide voice and body fluid samples. Appellant has not argued any of his exceptions relating to this appeal and it is therefore deemed abandoned. *State v. Sullivan,* 277 S. C. 35, 282 S. E. (2d) 838 (1981).

would be receiving a letter from Shari in the next day's mail. In subsequent calls, extending over a period of nearly three weeks, the caller advised the family of the location of Shari's body, described having sex with Shari, and recounted her acceptance that he was going to kill her. He said he had given Shari three options for her death: gunshot, drug overdose, or suffocation. When Shari chose suffocation, he tied her to a bed with electrical cord, and wrapped her head with duct tape so she could not breathe.

Appellant was indicted in Saluda County, where Shari's body was found, for murder and kidnapping. Upon appellant's motion, venue was transferred to Berkeley County because of pretrial publicity.

## GUILT PHASE

Appellant first asserts error in the trial judge's determination at several points during the trial that he was mentally competent to continue with the trial. A determination of competency was made prior to jury selection in Saluda County. During the guilt phase and again during the sentencing phase in Berkeley County, defense counsel expressed concerns about appellant's deteriorating mental condition. Each time, the trial judge permitted psychiatric and psychological experts for the State and the defense to examine appellant and to give their opinions of his mental condition at that time. The opinions of the experts are in dispute at each of the competency hearings. Defense counsel testified each time that communications between him and his client had ceased, and that appellant was not assisting in his defense in any manner.

At each of the competency hearings, the trial judge considered the expert testimony and the testimony of defense counsel. He also made independent conclusions based on his own observations of appellant's conduct. He specifically noted that appellant's outbursts and erratic behavior occurred only when the jury was present in the courtroom. Based on all the evidence before him, on each occasion, the trial judge determined appellant was competent to continue trial.

The test for competency to stand or continue trial is whether the defendant has the sufficient present ability to consult with his lawyer with a reasonable de-

gree of rational understanding and whether he has a rational, as well as a factual, understanding of the proceedings against him. *Dusky v. United States,* 362 U. S. 402, 80 S. Ct. 788, 4 L. Ed. (2d) 824 (1960); *Carnes v. State,* 275 S. C. 353, 271 S. E. (2d) 121 (1980). A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense may not be subjected to trial. *Drope v. Missouri,* 420 U. S. 162, 95 S. Ct. 896, 43 L. Ed. (2d) 103 (1975); *State v. Blair,* 275 S. C. 529, 273 S. E. (2d) 536 (1981).

The thrust of appellant's argument is that none of the State's experts ever interviewed defense counsel to determine whether appellant was assisting in his defense. However, the test of mental competence does not focus on whether a defendant in fact cooperates with his counsel; the question is whether he has sufficient mental capacity to do so if he so chooses.

A defendant's claim that a psychologist's testimony was incomplete or wrong does not preclude a finding that the defendant is competent to stand trial where the psychologist was subject to cross-examination by defense counsel. *United States v. Birdsell,* 775 F. (2d) 645 (5th Cir. 1985), *cert. denied,* _____ U. S. _____ , 106 S. Ct. 1979, 90 L. Ed. (2d) 662 (1986). Here, defense counsel fully cross-examined each of the State's experts regarding their failure to determine whether appellant was communicating with his counsel. In addition, defense counsel testified to his client's failure to cooperate.

The trial judge's findings of competence were based on the expert testimony, defense counsel's testimony, and the trial judge's own observations of appellant's behavior. The very nature of the inquiry as to a defendant's competency to stand trial demands that a court not be bound strictly by the views of experts. *United States v. Baraban,* 599 F. Supp. 1171 (S. D. Fla. 1984). The trial judge's determinations of competency have evidentiary support and are not against the preponderance of the evidence.

Appellant next asserts he was denied his Sixth Amendment right to a public trial by the trial judge's order that the courtroom be sealed during the testi-

mony of all witnesses. At the commencement of trial, the judge addressed himself to the spectators in the courtroom, and advised that ingress and egress to the courtroom would be prohibited while witnesses were testifying. Spectators were permitted to come and go between witnesses, and when the jury was out of the courtroom.

Appellant asserts this absolute prohibition and sealing of the courtroom denied him his constitutional right to a public trial. The Sixth Amendment to the United States Constitution and Article I, Section 14 of the South Carolina Constitution guarantee a criminal defendant a public trial. This protection is for the benefit of the accused, so the public may see that he is dealt with fairly, and the public's presence may keep his triers aware of the importance of their functions. *Waller v. Georgia*, 467 U. S. 39, 104 S. Ct. 2210, 81 L. Ed. (2d) 31 (1984). The requirement of openness of criminal proceedings can be overcome only by a finding that closure is necessary to preserve higher values. *Press-Enterprise Co. v. Superior Court*, 464 U. S. 501, 104 S. Ct. 819, 78 L. Ed. (2d) 629 (1984). Any order restricting the right to a public trial must be closely scrutinized to assure there is no impermissible infringement of the right. *State v. Sinclair*, 275 S. C. 608, 274 S. E. (2d) 411 (1981).

Appellant asserts the trial judge's order cannot survive this scrutiny, since he articulated no reasons for his closure of the courtroom. The cases upon which appellant relies involve orders in which certain persons were excluded from the courtroom, or all persons were excluded for particular testimony. Here, the trial judge's order was not directed at any person or persons, nor was it directed at any particular testimony. Anyone who wanted to be in the courtroom was welcome to be there. The trial judge merely placed a limitation on when the spectators could enter or leave the courtroom. Limitation on public access to a criminal trial is not subject to the same scrutiny given denial of access. *United States v. Kerley*, 753 F. (2d) 617 (7th Cir. 1985). "[A] limitation can withstand constitutional scrutiny so long as it is reasonable and neutral, as with time, place and manner restrictions generally." *Id.* at 621.

We cannot conclude the trial judge's limitation infringed

upon appellant's constitutional rights in any manner. *Cf.*, *People v. Venters*, 124 A. D. (2d) 57, 511 N. Y. S. (2d) 283 (1987) (closure of criminal trial during jury charge violated constitution where purported justification — preventing possible distraction for the jurors — applied equally to other parts to trial which were not closed).

Appellant next argues the evidence fails to support the jury's verdict that appellant was guilty, rather than guilty but mentally ill. Essentially, he argues the trial judge should have directed a verdict in his favor on the issue of guilt, and should have submitted to the jury possible verdicts of guilty but mentally ill, or not guilty. In reviewing the denial of the motion for directed verdict, this Court must view the evidence in a light most favorable to the State. Any evidence, direct or circumstantial, reasonably tending to prove the guilt of the accused creates a jury issue. *State v. Dobson*, 281 S. C. 36, 314 S. E. (2d) 310 (1984). Thus, if there was evidence of appellant's guilt, as well as evidence that he was guilty but mentally ill, the trial judge properly submitted both possible verdicts to the jury.

"A defendant is guilty but mentally ill if, at the time of the commission of the act constituting the offense, he had the capacity to distinguish right from wrong and to recognize his act as being wrong ..., but because of mental disease or defect he lacked sufficient capacity to conform his conduct to the requirements of the law." S. C. Code Ann. § 17-24-20(A) (1985). The burden of proof is on the State to show the defendant committed the crime, and the burden is on the defendant to show he was mentally ill at the time the crime was committed. S. C. Code Ann. S. C. § 17-24-20(B) (1985).

The State's case-in-chief contained evidence from which a jury could conclude appellant was guilty of the charges against him. Appellant introduced lay and expert evidence during his case that he was mentally ill, as defined by § 17-24-20(A), at the time the crime was committed. In reply, the State presented expert testimony that appellant was not mentally ill at the time the crime was committed. Thus, the

issue of appellant's mental illness was a disputed fact which was properly submitted to the jury.[2]

Appellant asserts the trial judge erred in failing to instruct the jury that a sentencing proceeding would follow even if appellant was found guilty but mentally ill. At trial, the State asserted the only time appellant sought professional assistance for his mental illness was after he had been accused of a crime, and that his mental illness was feigned for purposes of avoiding punishment. The solicitor argued to the jury that a verdict of guilty but mentally ill would be a prize for appellant. The trial judge refused appellant's request to instruct the jury that even if it found appellant guilty but mentally ill it would still be permitted to determine whether life or death was the appropriate sentence.

The function of a jury is to determine whether a defendant is guilty or not guilty. Information as to penalty is of no aid to the jury in determining whether the defendant committed the crime charged. *State v. Brooks*, 271 S. C. 355, 247 S. E. (2d) 436 (1978).

In *Brooks*, this Court also said where the right to fix punishment or make a recommendation regarding punishment rests with the jury, it is error to refuse to instruct the jury in that respect. That statement, however, was made in the context of a proceeding in which the jury's determination of guilt and its recommendation regarding sentence were made at the same time. It has no application in a bifurcated proceeding, when the jury's determinations regarding guilt and punishment are made separately.

The subsequent progress of a trial is not relevant to the jury's determination of whether a defendant is guilty, guilty but mentally ill, or not guilty, and it is not error to refuse to instruct the jury regarding punishment at the guilt phase. *See e.g., State v. Huiett*, 271 S. C. 205, 246 S. E. (2d) 862 (1978) (it is error to instruct the jury

---

[2] It is not necessary to decide whether the State is required to produce evidence that a defendant is not mentally ill after a defendant has introduced testimony that he is mentally ill. *Cf., State v. Milian-Hernandez*, 287 S. C. 183, 336 S. E. (2d) 476 (1985) (once a defendant introduces evidence of insanity, the presumption of sanity disappears and it is incumbent of the State to present evidence of sanity). The State does not address this, and the facts of this case do not require a resolution of this issue.

that a verdict of not guilty by reason of insanity may lead to the defendant's discharge from custody). *See also State v. Valenti*, 265 S. C. 380, 218 S. E. (2d) 726 (1975).

Appellant asserts the trial judge should have granted a mistrial after the judge's comments in the presence of the jury suggested his opinion that appellant was not mentally ill. Appellant's testimony was rambling, full of free association, and oftentimes directionless.[3] He would begin to answer a question, then his testimony would wander into unrelated areas. The trial judge occasionally attempted to refocus appellant's attention to the question in order to keep his answers responsive. During cross-examination by the solicitor, appellant began to argue with the solicitor, and to ask questions himself. The judge admonished appellant to answer the questions, and appellant responded by questioning the solicitor's own mental competence. The judge then stated:

> "Mr. Bell, I am telling you. I know Mr. Bell that you understand the question, you hear the question, answer it—then you explain in any way you want ..."

Defense counsel requested a bench conference, after which the trial judge carefully instructed the jury he had not commented on the facts, and that they should completely disregard the remark. Appellant argues this curative instruction was insufficient.

A trial judge should never intimate to the jury his opinion on the credibility of the witnesses, the weight of the evidence, or the guilt of the accused. *State v. Sosebee*, 284 S. C. 411, 326 S. E. (2d) 654 (1985). However, remarks made by a trial judge in ruling on the admissibility of evidence or ruling on other matters during the trial do not fall within the prohibition against judges charging juries on issues of fact. *State v. Mishoe*, 198 S. C. 215, 17 S. E. (2d) 142 (1941).

In any event, even if the judge's remark was error, the curative instruction was sufficient. An instruction to disregard incompetent evidence is usually deemed to have cured the error unless on the facts of the particular case it is

---

[3] Appellant's testimony covers approximately 500 pages in the transcript.

probable that, notwithstanding the instruction, the accused was prejudiced. *State v. Craig,* 267 S. C. 262, 227 S. E. (2d) 306 (1976). *See also State v. Smith,* 290 S. C. 393, 350 S. E. (2d) 923 (1986); *State v. Lynn,* 277 S. C. 222, 284 S. E. (2d) 786 (1981). This argument is without merit.

Appellant asserts the trial judge erred in ejecting ▮ him from the courtroom during closing argument and in refusing his counsel's request to provide an audio hookup in the holding cell after he was ejected.

Twice during defense counsel's closing argument, appellant stood and objected to the trial proceeding on the Sabbath. The trial judge excused the jury, and explained to appellant his right to be present in the courtroom as well as the limits on the right. He took a recess to provide defense counsel an opportunity to further discuss the matter with his client.

When trial resumed, appellant again interrupted defense counsel's argument, with complaints of fatigue and hunger. The trial judge excused the jury, and discussed appellant's right with him again. Appellant told the trial judge he could not sit quietly if trial resumed and he would insist on obstructing the trial in one way or another. Based on appellant's unequivocal statements, the trial judge removed appellant from the courtroom, and denied defense counsel's request for an audio hookup in the holding cell. When trial resumed, the jury was instructed they should not draw any inference at all from appellant's absence from the courtroom.

An accused has the right to be present at every stage ▮ ▮ of his trial. *Illinois v. Allen,* 397 U. S. 337, 90 S. Ct. 1057, 25 L. Ed. (2d) 353 (1970). This right, however, may be waived. *Ellis v. State,* 267 S. C. 257, 227 S. E. (2d) 304 (1976). A defendant may properly be excluded when his conduct is disruptive or is interfering with the progress of the trial. *In re: Dwayne M.,* 287 S. C. 413, 339 S. E. (2d) 130 (1986). Although the right to be present is a substantial one, no presumption of prejudice arises from a defendant's exclusion. *State v. Whaley,* 290 S. C. 463, 351 S. E. (2d) 340 (1986); *State v. Smart,* 278 S. C. 515, 299 S. E. (2d) 686 (1982).

The trial judge was generous and patient in accommodating appellant's outbursts prior to excluding him from the

courtroom. Even without appellant's candid admissions that he would impede the trial if he remained in the courtroom, his disruptive conduct clearly constituted a waiver of his right to be present at trial. Since appellant intentionally waived his right to be present, he was not entitled to audio access to the proceedings which transpired in his absence. *See, e.g., State v. Logan,* 279 S. C. 345, 306 S. E. (2d) 622 (1983) (a defendant cannot complain of an error which results from his own conduct, or to which his conduct has contributed).

## SENTENCING PHASE

Appellant asserts error in admitting testimony regarding the social worth of the victim and in allowing the solicitor to compare the victim's social worth to appellant's social worth. In the course of describing the events surrounding the abduction of Shari Smith, several witnesses testified to facts surrounding Shari's moderately affluent lifestyle and her plans for her future. Each of these facts were related to the events surrounding the crime. Most were critical for the jury's understanding of why Shari was in the various places she was on the day of her abduction.

Appellant argues this Court's decision in *State v. Gaskins,* 284 S. C. 105, 326 S. E. (2d) 132 (1985) requires reversal on this issue. There, Gaskins, who was a prison inmate at the time of his crime, was convicted of killing another prison inmate. The trial judge denied Gaskins' request to introduce the victim's confession to murder. This Court affirmed, stating the victim's death row status did not entitle Gaskins to kill him.

In *Gaskins,* the proffered evidence was intended to directly illustrate the victim's status, ostensibly in mitigation. Here, however, the references to the victim's lifestyle were directly related to competent, relevant testimony concerning the crime.

Subsequent to argument in this case, the United States Supreme Court held it constitutionally impermissible for a capital sentencing determination "to turn on the perception that the victim was a sterling member of the community rather than someone of questionable character." *Booth v. Maryland,* 482 U. S. _____ , _____ , 107 S. Ct. 2529, 2534, 96 L. Ed. (2d) 440, 450 (1987). In so holding, however, the Court

specifically stated that evidence of the victim's personal characteristics "may well be admissible because they relate directly to the circumstances of the crime." 107 S. Ct. at 2535 n. 10. Thus, *Booth* supports our conclusion.

Appellant similarly argues the trial judge erred in ■ allowing testimony regarding the effects of the crime on the victim's sister, and the effect of a prior crime on that victim's family. During the penalty phase, Dawn Smith testified she never went out of the house alone after her sister's abduction and murder. The mother of a young girl who had been threatened by appellant when he lived in North Carolina stated she had become anxious about her daughter's safety since that crime.

The function of a capital sentencing jury is to "express the conscience of the community on the ultimate question of life or death." *Witherspoon v. Illinois,* 391 U. S. 510, 519, 88 S. Ct. 1770, 1775, 20 L. Ed. (2d) 776, 783 (1968). In so doing, the jury is required to focus on the defendant as a "uniquely individual human being." *Booth v. Maryland, supra,* citing *Woodson v. North Carolina,* 428 U. S. 280, 96 S. Ct. 2978, 49 L. Ed. (2d) 944 (1976). In *Booth,* the Court vacated a death sentence in which the jury had been permitted to consider a Victim Impact Statement containing graphic, detailed, and articulate descriptions of the family's grief over the victim's death. "[T]he degree to which a family is willing and able to express its grief is irrelevant to the decision whether a defendant . . . should live or die." *Booth,* 107 S. Ct. at 2534.

This case is clearly distinguishable from *Booth.* Here, the jury was not given, nor even made aware of, a Victim Impact Statement. *See* S. C. Code Ann. § 16-3-1150 (1985).[4] In addition, it is unclear whether Dawn Smith's testimony related to appellant's threats toward her, or to the murder of her sister. In telephone calls to the Smith home after Shari's murder, appellant threatened Dawn that she was his next victim.

---

[4] The South Carolina procedure for use of Victim Impact Statement differs significantly from the Maryland procedure at issue in *Booth.* It is clear from S. C. Code Ann. § 16-3-1550(E) (1985) that only sentencing judges, not juries, are to have access to the statement. In Maryland, a capital jury is required to consider the Victim Impact Statement during the sentencing proceeding. Md. Ann. Code Art. 41, § 4-609(d) (1986).

Lastly, Dawn's reference to her fear was vague and brief. In *Booth*, the Victim Impact Statement was five pages long and contained clearly irrelevant facts: i.e., the victim's son wakes up each night at the precise time of the murders, has visions of his parents, and thinks of them constantly; the victim's daughter cries every day, and cannot look at kitchen knives (the murder weapon) without thinking of the murders; the funeral was the largest ever recorded in the history of the funeral home and the family received more than 1,000 sympathy cards; and other similar facts. Clearly, the facts in this case are distinguishable.

In addition, the testimony of the mother of appellant's North Carolina victim was admitted in the course of referencing appellant's prior crime. *See, e.g., State v. Gaskins, supra,* (details of prior murders in defendant's confession). The reference to the mother's fear for her daughter's safety was not admitted to dramatize the prior crime, but related only to the existence of the prior crime. *Booth, supra.*

Appellant next asserts error in the solicitor's closing argument in the penalty phase of the trial. The solicitor (1) referred to appellant as "different from the rest of us"; (2) suggested he was appearing on behalf of Shari Smith; (3) referred to Shari Smith as the only witness from whom the jury would not be able to hear; and, (4) referred to the protections of the legal process being afforded appellant and said appellant gave Shari Smith no similar protections.

A trial judge is vested with broad discretion in dealing with the range of propriety of closing argument, and ordinarily his rulings on such matters will not be disturbed. *State v. Patrick,* 289 S. C. 301, 345 S. E. (2d) 481 (1986). The solicitor's argument must be carefully tailored so as not to appeal to the personal bias of a juror, nor calculated to arouse his passion or prejudice. *State v. Livingston,* 282 S. C. 1, 317 S. E. (2d) 129 (1984). Here, the solicitor's argument was eloquent, but we believe it was within acceptable limits.

Appellant next argues the jury failed to give adequate consideration in mitigation to the overwhelming evidence appellant was mentally ill at the time of the crime. The burden is on the jury to consider the evidence presented and determine whether the mitigating factors

exist and if so, the significance to be afforded those mitigating factors. *State v. Patrick, supra.* Whether appellant's evidence of mental illness obviated in favor of a sentence of life imprisonment was for the jury to determine.

Lastly, appellant argues the trial judge erred in failing to instruct the jury appellant did not bear the burden of establishing his mitigating circumstances by a preponderance of the evidence. There is no burden of proof on a capital defendant with regard to evidence of mitigating circumstances. Rather, the jury is to consider the evidence presented and determine whether the mitigating factors exist and, if so, the significance to be accorded them. *State v. Patrick, supra.* The trial judge's charge was consistent with *Patrick* and was therefore not erroneous.

## PROPORTIONALITY REVIEW

We have reviewed the entire record and conclude the death sentence was not the result of passion, prejudice or other arbitrary factor, and the evidence supports the jury's finding of aggravating circumstances. S. C. Code Ann. § 16-3-25(C)(1)-(2) (1985). The death sentence is not excessive or disproportionate to the penalty imposed in similar cases. S. C. Code Ann. § 16-3-25(C)(3) (1985). *See State v. Owens*, 359 S. E. (2d) 275 (S. C. 1987); *State v. Elmore*, 286 S. C. 70, 332 S. E. (2d) 762 (1985); *State v. Plath*, 281 S. C. 1, 313 S. E. (2d) 619 (1984); *State v. Adams*, 279 S. C. 228, 306 S. E. (2d) 208 (1983); *State v. Copeland*, 278 S. C. 572, 300 S. E. (2d) 63 (1982); *State v. Shaw*, 273 S. C. 194, 255 S. E. (2d) 799 (1979).

The conviction and sentence are

Affirmed.

GREGORY, HARWELL and FINNEY, JJ., and LITTLEJOHN, Acting Associate Justice, concur.