24363

The STATE, Respondent v. Robert Lee NANCE, Appellant.
(466 S.E. (2d) 349)

Supreme Court

*Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, Columbia, for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Alexandria Broughton Skinner, Senior Assistant Attorney General William Edgar Salter, III, Columbia, and Solicitor Dudley Saleeby, Jr., Florence, for respondent.*

Heard Sept. 21, 1995.

Decided Jan. 8, 1996; Reh. Den. Feb. 13, 1996.

BURNETT, Justice:

Appellant was convicted of murder, criminal sexual conduct in the first degree, assault and battery with intent to kill, burglary in the first degree, and armed robbery and was sentenced to death. We affirm.

## FACTS

In the early morning hours of November 7, 1992, Appellant approached the home of seventy-nine-year-old Robert Fraley and his wife of 53 years, seventy-three-year-old Violet Fraley. After cutting the telephone lines to the home, Appellant knocked on the front door. The Fraleys awoke, and Mr. Fraley answered the door. Appellant told Mr. Fraley that his car had broken down, and asked to use the telephone. When Mr. Fraley opened the door, Appellant stabbed him numerous times with a screwdriver. Mr Fraley was seriously, but not mortally, wounded, and Mrs. Fraley sat her husband in a chair in the kitchen. Appellant demanded money, and Mrs. Fraley gave him the money she had received when she cashed her social security check. Then, as Mr. Fraley watched helplessly, Appellant sexually assaulted Mrs. Fraley and stabbed her to death.

## DISCUSSION

### I. *Brady Motion*

Appellant moved the trial court to require the Solicitor to open his file under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. (2d) 215 (1963). The Solicitor told the court: "Your Honor, we have made available to [Appellant] everything that has been supplied to us. I found nothing in it that I felt was exculpatory or mitigating; however, they might draw a different conclusion. It has been provided to them. . . . We have complied." The trial court refused Appellant's request that he be allowed to see the entire file, and the court then ordered the entire file, including attorney work product, sealed and made a part of the record. The court did not review the contents of the file *in camera.*

Appellant argues that this exchange should have alerted the judge that there was undisclosed material remaining in

the file which Appellant might conclude was exculpatory. Appellant further argues that the trial court erred by failing to conduct an *in camera* inspection of the file. We disagree.

*Brady* requires that the State disclose evidence in its possession favorable to the accused and material to guilt or punishment. *State v. Bryant*, 307 S.C. 458, 415 S.E. (2d) 806 (1992). Before the State must produce undisclosed evidence for the trial court's inspection, the defendant must first establish a basis for his claim that it contains material exculpatory or impeachment evidence. *Id.* The trial court should then rule upon the materiality of the evidence to determine whether the State must produce it for the defendant's use. *Id.*

Appellant made no showing that the file contained any undisclosed material exculpatory or impeachment evidence. In lieu of this showing, Appellant argues that the Solicitor's statement—"I found nothing in it that I felt was exculpatory or mitigating; however, *they might draw a different conclusion.*"[1]—should have alerted the court that the file might contain undisclosed *Brady* material. We agree with Respondent that what the Solicitor was saying was that he *had supplied* Appellant with all *Brady* material, but that Appellant might disagree about the exculpatory nature of what had been provided to him.

## II. *Competency*

Appellant argues that the trial court erred in finding him competent to stand trial. We disagree.

"The test for competency to stand trial or continue trial is whether the defendant has the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as a factual, understanding of the proceedings against him." *State v. Bell*, 293 S.C. 391, 395-396, 360 S.E. (2d) 706, 708 (1987), *cert denied*, 484 U.S. 1020, 108 S.Ct. 734, 98 L.Ed. (2d) 682 (1988) (citing *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. (2d) 824 (1960)). The defendant bears the burden of proving his incompetence by a preponderance of the evidence. *State v. Lee*, 274 S.C. 372, 264 S.E. (2d) 418 (1980). The trial court's determination of competency will

---

[1] (Emphasis added.)

be upheld if it has evidentiary support and is not against the preponderance of the evidence. *Bell, supra.*

In determining competency, the trial court heard from three mental health care professionals: Drs. Dewitt, McKee, and Sheth. Dr. Dewitt was called by Appellant, and he testified that Appellant was psychotic and not competent to stand trial. Drs. McKee and Sheth work at the Hall Institute, the facility to which the judge sent Appellant for a competency evaluation. Their first report, dated May 4, 1993, stated that they had "No opinion" as to Appellant's competency to stand trial, his criminal responsibility, and his capacity to conform. The first report did state that Appellant was "well-oriented to time, place and person. He is in contact with reality." The trial court declined to make a competency ruling on the basis of this "No opinion" report and sent Appellant back to the Hall Institute with specific instructions that the personnel there reach a conclusion regarding competency. The second report, dated June 14, 1993, stated affirmatively that Appellant was competent to stand trial. It stated that Appellant was aware of the seriousness of his charges (he understood that murder is more serious than armed robbery), that Appellant was familiar with the court system, and that "[h]e does have the ability to cooperate with his attorney in the preparation of his defense if he chooses so [sic]."

Appellant argues that these two competency reports are inconsistent. We disagree. The reason that the first report expressed "No opinion" as to competency was that during the first evaluation of Appellant, he had exercised his *Miranda*[2] rights. Dr. Sheth testified that she was under orders from her supervisors to write "No opinion" on the report where, as happened here, the defendant exercises his *Miranda* rights. The second report used essentially the same sources of information as the first, yet in the evaluation which gave rise to the second report, Appellant's counsel was present and Appellant did not exercise his *Miranda* rights.

Appellant further asserts that the testimony of Dr. McKee and Sheth reveals inconsistencies. Dr. McKee testified that at one point Appellant said that the solicitor's function was "to

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. (2d) 694 (1966).

help you," that the judge was against him, and that rape meant to hold a gun to someone's head and beat them. Dr. Sheth testified: "When you ask [Appellant] a question, he just answered completely wrong." In the second competency report, Dr. Sheth stated when she asked Appellant direct question regarding the roles of various court officers, "his answers were wrong like he stated 'my lawyer's role is to keep voices and demons away from me and the solicitor is on my side.'" However, Dr. Sheth testified: "What delusion and hallucination [Appellant] is having, this is very self-serving."

Admittedly, the trial court was confronted with conflicting opinions regarding Appellant's competency. However, we find that there is ample evidentiary support for the trial court's determination that Appellant was competent, and we find that determination not to be against the preponderance of the evidence. *See Bell, supra.* Although Dr. Dewitt testified that Appellant was not competent to stand trial, the record reveals that Dr. Dewitt reached that determination after only two meetings with Appellant. Drs. Sheth and McKee, on the other hand, had the opportunity to observe Appellant for close to a month while he was an inpatient at the Hall Institute. Their month-long observation of Appellant led them to conclude that Appellant was competent to stand trial and that his peculiar actions indicated malingering, not psychosis. While Appellant was at the Hall Institute, Appellant was monitored constantly, and he performed assigned activities appropriately. Although he told Dr. Sheth that he was hearing voices, he never indicated to the nursing staff that he was experiencing such problems.

Moreover, we note that Appellant's statements referencing "demons" and indicating confusion stand in stark contrast to the actions he took during the rape and murder of Mrs. Fraley and the vicious attack on her husband. Before attacking the Fraleys, Appellant cut the phone lines to their home, thereby isolating them. Appellant then concocted a story that his car was broken down and asked Mr. Fraley for help. His plan was intelligently conceived and cleverly executed, resulting in the Fraleys being cut off and made helpless to his attack. Thus, we agree with the appraisal of Dr. Sheth that Appellant's asserted delusions were "self-serving."

## III. *Haldol*

While Appellant was in jail awaiting trial, he was prescribed the antipsychotic drug Haldol after he complained hearing voices. Appellant's attorneys moved pretrial that Appellant be taken off Haldol. The trial court granted the motion, relying on *Riggins v. Nevada,* 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed. (2d) 479 (1992). On June 25, 1993, during the penalty phase of the trial, Capt. Redden of the Florence County Detention Center testified that Appellant had taken Haldol as recently as 9:00 a.m. that morning. Appellant moved for a new trial, arguing that he had been administered Haldol against the order of the judge.

The judge conducted an extensive hearing on the matter and issued an order denying Appellant's new trial motion. The judge found that (1) defense counsel had moved that Appellant be taken off Haldol; (2) Appellant himself had asked defense counsel why he was not being administered the drug; (3) defense counsel did nothing to communicate the judge's order to the jail personnel; (4) the jail personnel, unaware of the court's order, offered Haldol and other prescribed medication to Appellant as they had always done; and (5) Appellant took the medication voluntarily. We find substantial evidentiary support in the record for the judge's findings.

*Riggins, supra,* involved a capital murder case in which Riggins moved the trial court to terminate the administration of antipsychotic drugs so that the jury could view him in his normal, unmedicated state. The trial court summarily denied Riggin's motion. The United States Supreme Court held that the forced administration of antipsychotic drugs to Riggins violated his Sixth and Fourteenth Amendment rights.

*Riggins* is inapplicable to this case, however, because there is no evidence that Appellant was ever *forcibly* medicated. On the contrary, he indicated to his attorneys that he desired to continue taking Haldol. Under these circumstances, Appellant's due process rights were not violated.

### IV. *Admission of Evidence*

The trial court admitted three photographs showing Mr. Fraley in his hospital bed. The photographs illustrate the stab wounds to Mr. Fraley's hands, abdomen, right shoulder, and face, and were taken after the wounds had

been cleaned. Appellant argues that the photographs were unduly prejudicial. We disagree.

The relevancy, materiality, and admissibility of photographs as evidence are matters left to the sound discretion of the trial court. *State v. Matthews*, 296 S.C. 379, 373 S.E. (2d) 587 (1988), *cert denied*, 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed. (2d) 861 (1989). If the offered photograph serves to corroborate testimony, it is not an abuse of discretion to admit it. *State v. Todd*, 290 S.C. 212, 349 S.E. (2d) 339 (1986). The photographs at issue in the case corroborated the testimony of Dr. Goldstein, who testified about Mr. Fraley's medical condition and about his risk of bleeding to death from the stab wounds. They further corroborated Mr. Fraley's testimony regarding the various places on his body where Appellant stabbed him. The photographs were also relevant to the issue of malice, an element of assault and battery with intent to kill. *See State v. Jennings*, 280 S.C. 62, 309 S.E. (2d) 759 (1983). Moreover, we have viewed the photographs and find that they were not unduly prejudicial to Appellant.

Appellant also argues that the trial court erred in admitting the bloody pajamas Mrs. Fraley was wearing on the night of her murder. We disagree.

The admission of evidence is within the trial court's discretion and absent an abuse of discretion will not be reversed by this Court. *State v. Tucker*, 319 S.C. 425, 462 S.E. (2d) 263 (1995). "Evidence is relevant if it tends to establish or make more or less probable some matter at issue upon which it directly or indirectly bears." 462 S.E. (2d) at 265. The pathologist testified the pajamas had tears in the cloth which corresponded to the stab wounds suffered by Mrs. Fraley. The pajamas also corroborated Mr. Fraley's testimony that Appellant ordered Mrs. Fraley to get dressed after he sexually assaulted her but before he stabbed her. Under these circumstances, the pajamas were relevant, and their probative value outweighed any prejudicial effect.

## V. *Other Issues*

Appellant's remaining issues are affirmed pursuant to Rule 220(b)(1), SCACR: *State v. Childs*, 299 S.C. 471, 385 S.E. (2d) 839 (1989) (Issue 4); *State v. Hudgins*, 319 S.C. 233, 460 S.E. (2d) 388 (1995) (Issues 5, 8, 9, 10, 11, 12, 13, 14, and 15).

## VI. *Proportionality Review*

We have conducted a proportionality review pursuant to S.C. Code Ann. § 16-3-25 (1985). The sentence in this case was not the result of passion, prejudice, or other arbitrary factors, and the evidence supports the jury's finding of aggravating circumstances. The sentence is not excessive or disproportionate to the penalty imposed in similar cases. *See Tucker, supra.*

Affirmed.

FINNEY, C.J., TOAL and MOORE, JJ., and L. CASEY MANNING, Acting Associate Justice, concur.