597 S.E.2d 782

**Donney S. COUNCIL, Respondent,**

**v.**

**William D. CATOE, Commissioner, South Carolina Department of Corrections, and Henry Dargan McMaster, S.C. Attorney General, Petitioners.**

No. 25833.

Supreme Court of South Carolina.

Submitted Nov. 19, 2003.

Decided June 1, 2004.

Rehearing Denied June 24, 2004.

122

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, for Petitioner.

Teresa L. Norris, of the Center for Capital Litigation, and Theresa Lee Clement, of Clement Law Office, both of Columbia, for Respondent.

John F. Hardaway, of Columbia, for Guardian Ad Litem.

Chief Justice TOAL:

This Court granted the State's petition for certiorari to review whether the post-conviction relief (PCR) judge erroneously granted Donney Council's (respondent) motion to stay the PCR proceedings until he was deemed competent. We reverse the PCR judge's imposition of an indefinite stay and adopt a new approach for determining whether a petitioner's PCR hearing should go forward when he claims incompetence.

## FACTUAL/PROCEDURAL BACKGROUND

Respondent was convicted of murder, administering poison, burglary, larceny, grand larceny of a motor vehicle, kidnapping, and criminal sexual assault in the first degree. The jury sentenced him to death for murder and gave him various concurrent and consecutive sentences for the other offenses. This Court affirmed the convictions and sentences. *State v. Council*, 335 S.C. 1, 515 S.E.2d 508 (1999).

Following the denial of certiorari on his direct appeal, respondent filed an application for PCR. Subsequently, he filed a motion *pro se* to waive further PCR proceedings and be executed. On January 19, 2000, this Court issued an order staying respondent's execution, allowing him to file an application for PCR. After the PCR judge appointed counsel for respondent, respondent filed an amended PCR petition and motion to indefinitely stay the PCR proceedings. A hearing was held on December 8, 2000, to review respondent's request to waive PCR and be executed. Respondent's testimony clearly indicated that he was mentally unstable,[1] and therefore the PCR judge ordered that the Department of Mental Health (DMH) conduct a competency evaluation.

The DMH doctors diagnosed respondent with Schizophrenia, Undifferentiated type. The PCR judge found respondent to be incompetent and granted respondent's motion to indefinitely stay the PCR proceedings until respondent regained his competency.

---

1. Respondent testified that he believed the murder victim was still alive and that he was part of a cult responsible for keeping the earth spinning on its axis.

This Court granted the State's petition for writ of certiorari to review the following question:

Did the PCR judge err in indefinitely staying respondent's PCR proceedings until respondent became mentally competent?

### Law/Analysis

The State asserts that the PCR court abused its discretion in granting respondent's motion to stay the PCR proceedings until respondent was deemed competent.

 The issue of whether a prisoner must be competent to collaterally challenge his conviction is a question of first impression in this state. While the State cannot execute an incompetent death-sentenced inmate, *Singleton v. State,* 313 S.C. 75, 437 S.E.2d 53 (1993),[2] and the law prohibits a criminal trial of an incompetent defendant, *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *State v. Bell,* 293 S.C. 391, 395–396, 360 S.E.2d 706 (1987), neither this Court nor the General Assembly has determined whether a mentally incompetent prisoner may seek an indefinite stay for his PCR proceedings.

### Order from the PCR Court

 In his Order, the PCR judge set forth six reasons for his grant of an indefinite stay. First, this case is a capital case, thus, respondent will remain incarcerated for the remainder of his life, regardless of the outcome of the PCR proceeding. Second, the issues that respondent presented in his PCR petition are extremely fact intensive, which will ultimately require respondent's assistance. Third, even if the court continued the proceedings and allowed respondent to submit successive PCRs,[3] federal law would prohibit respon-

---

**2.** *Singleton* enunciated the two-part test for determining pre-execution incompetency: the first prong examines whether the petitioner understands the nature of the proceedings and the reasons for and nature of his punishment; and the second prong assesses whether the petitioner can assist counsel in his defense. *Id.* at 79–80, 437 S.E.2d at 55.

**3.** Normally, state law procedurally prohibits this course of action. *See* S.C.Code Ann. § 17–27–90, *Aice v. State,* 305 S.C. 448, 409 S.E.2d 392 (1991).

dent from filing successive habeas corpus petitions in the event a habeas issue is later discovered. 28 U.S.C. 2244(b) (West Supp.2003). Fourth, the State's interests are "minimally impaired" if the court stays the proceedings, while respondent's interest in effectively presenting his collateral challenge would be "severely impaired." Fifth, an indefinite stay permits the court to retain jurisdiction so that it may regularly evaluate respondent's mental health and efforts to regain mental competence. Sixth, if the court refused to grant the indefinite stay, piecemeal litigation would likely ensue once respondent regained his mental competency.

We find that the trial judge erred in staying the proceedings because (1) a PCR proceeding is civil, not criminal; (2) the judge incorrectly concluded that, based on two opinions from this Court, this Court would rule that incompetent prisoners must regain competence before a PCR proceeding is held; and (3) respondents grounds for relief are not "all extraordinarily fact intensive" and do not warrant the assistance of a mentally competent petitioner. We adopt the analysis employed in other jurisdictions that allows for PCR proceedings of mentally incompetent petitioners to go forward.

## CIVIL ACTION

A PCR action is a civil action. *See Wade v. State,* 348 S.C. 255, 259, 559 S.E.2d 843, 844 (2002) (citing 17 S.C. Jur. 2 (1993) ("State post-conviction relief is a civil action by which a person convicted of, or sentenced for, a crime, and who is either detained or faces a possibility of detention, institutes a proceeding to challenge a court's conviction or sentence on constitutional grounds.")). Therefore, the constitutional protections that forbid a criminal trial of a mentally incompetent defendant do not apply. *See Pate,* 383 U.S. at 378, 86 S.Ct. at 838; *Bell,* 293 S.C. at 395–396, 360 S.E.2d at 708.

## MISINTERPRETATION OF TWO S.C. SUPREME COURT OPINIONS

Respondents brief and the PCR judge's Order incorrectly presume that this Court has impliedly held that PCR proceedings for a mentally incompetent petitioner must be stayed. Respondent argues that in *Norris v. State,* 335 S.C.

30, 515 S.E.2d 523 (1999), this Court approved the trial judge's finding that a PCR hearing could not proceed until the prisoner regained his metal competency. We disagree. The *Norris* Court held that the State is estopped from asserting the statute of limitations defense to a subsequent PCR application after it had previously consented to a dismissal of the original PCR application and agreed that the petitioner could re-file his application. *Id.* at 33, 515 S.E.2d at 525. The Court specifically stated that since the case could be resolved based on principles of equitable estoppel, it would not address tolling the statute of limitations for PCR applications because of petitioners mental incompetency. *Id.*

Respondent also relies on an unpublished opinion to support the proposition that his PCR proceedings should be indefinitely stayed. *Locklair v. State,* No.2000–MO–138 (S.C. Nov. 17, 2000). In *Locklair,* this Court held, in an unpublished opinion, that the State should provide funds for a competency evaluation of an indigent petitioner. The Court also held that if the petitioner was deemed competent, the PCR hearing would proceed, and if not, the PCR application would be dismissed without prejudice to petitioners right to re-file once his competency is restored. *Id.*

In our view, this opinion does not impliedly resolve the issue before us today. In *Locklair,* the petitioner's counsel moved to have his client evaluated because in the weeks leading up to the PCR proceeding, petitioner was unable to assist counsel because he was taking drugs that were causing memory deficiencies. When petitioners counsel moved to have a state-funded mental evaluation of his client prior to the PCR hearing, the PCR court ordered that the state would not provide funds for the evaluation and gave petitioner's counsel only two options: (1) proceed with the PCR hearing without the evaluation or (2) agree to dismiss the petition without prejudice subject to the condition that petitioner obtain a competency evaluation at his own expense.

We hold that our resolution of *Locklair* does not stand for the proposition that PCR petitioners must be competent in order to proceed with a PCR hearing; rather, we merely held that the PCR judge could not deny the petitioner's right to a state-funded competency evaluation prior to his PCR hearing.

Further, as an unpublished opinion, *Locklair* has no precedential value. Rule 220(a), SCACR.

## NOT FACT INTENSIVE

We find that the trial judge erred in finding that the issues respondent presented in his PCR application were "all extraordinarily fact intensive"[4] that required respondent's assistance, which he was unable to provide given his incompetent state.

■ The first issue, involving the mitochondrial DNA evidence, does not require respondent's assistance. In his well-written analysis in *Council*, Justice Burnett addressed respondent's challenge to the submission of the mitochondrial DNA evidence, applying the common law factors and South Carolina Rules of Evidence for determining the admissibility of scientific evidence and found that the evidence was properly admitted. 335 S.C. at 17–22, 515 S.E.2d at 516–519; *see also State v. Jones,* 273 S.C. 723, 731, 259 S.E.2d 120, 124 (1979) (providing the standard for the admissibility of scientific evidence prior to 1990); *State v. Ford,* 301 S.C. 485, 392 S.E.2d 781 (1990) (setting forth the factors for determining the admissibility of scientific evidence under the *Jones* standard).

■ Respondent's collateral attack on the admission of the mitochondrial DNA evidence in the guilt phase of his trial

---

4. Respondent petitioned for the following grounds for relief in his PCR application:

9(a) Applicant was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and South Carolina law because counsel requested mitochondrial DNA testing prior to trial but failed to retain their own expert to assist counsel, which resulted in admission of this type of evidence for the first time in a South Carolina court without sufficient guarantee that the underlying science was reliable.

9(b) Applicant was denied the effective assistance of counsel during voir dire and jury selection in violation of South Carolina law and the Sixth and Fourteenth Amendments to the United States Constitution.

9(c) Applicant was denied the effective assistance of counsel during the sentencing phase of his trial in violation of South Carolina law and the Sixth and Fourteenth Amendments to the United States Constitution.

9(d) Applicant may not be executed consistent with the Eighth and Fourteenth Amendments to the United States Constitution and South Carolina law because he is incompetent.

would be based exclusively on the law of evidence and the trial record. Therefore, respondent's assistance would not be required on this issue. Furthermore, because the prosecution presented an overwhelming amount of evidence of respondent's guilt, we find that the admission of the DNA evidence did not prejudicially influence the trial's outcome. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The issues of quality and type of mitigation evidence are the only issues of merit that respondent raised in his PCR application. While it might be theoretically argued that the defendant needs to assist his counsel in providing evidence of social history and mental competency at the PCR hearing, this form of testimony generally comes from family and social history records, from mental health records, and from experts qualified to opine that respondent is mentally ill[5]—the very type of expert testimony that *was* presented at the hearing below.

The other two collateral challenges, *voir dire* and incompetency, do not require respondent's assistance. A *voir dire* challenge requires a review of trial counsel's conduct during *voir dire,* which can be found in the trial record, coupled with a presentation of legal argument about any racial bias issues that should have been raised. These two components of the collateral attack of trial counsel's conduct during *voir dire* do not require respondent's assistance.

As for the incompetency issue, respondent relied not on his own assistance to his PCR counsel, but on expert testimony that he is mentally incompetent based upon a diagnosis of Schizophrenia, Undifferentiated type.

### THE WISCONSIN APPROACH

Finally, given that South Carolina law does not provide an approach for determining whether an incompetent petitioner's PCR hearing should proceed, we look to other jurisdictions for guidance. The procedure adopted by the Wisconsin Supreme Court allows the PCR proceedings of an incompetent petition-

---

5. *See Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

er to go forward but permits the petitioner to revisit a fact-based collateral attack in a future proceeding:

> Pending the determination of competency and even after a determination of incompetency, defense counsel should initiate or continue [PCR] relief on a defendant's behalf when any issues rest on the circuit court record, do not necessitate the defendant's assistance or decisionmaking, and involve no risk to the defendant. We agree with the parties that requiring defense counsel to go forward with [PCR] relief to the extent feasible ensures that an alleged incompetent or incompetent defendant will not suffer from the delay of meritorious claims . . .

> [I]f defense counsel cannot initiate or continue [PCR] relief on the defendant's behalf because issues necessitate defendant's assistance or decisionmaking, defense counsel may request a continuance or enlargement of time for filing the necessary notices or motions for [PCR] relief . . .

> Defendants who are incompetent at the time they seek [PCR] relief should, after regaining competency, be allowed to raise issues at a later proceeding that could not have been raised earlier because of incompetency.

*State v. Debra A.E.*, 188 Wis.2d 111, 523 N.W.2d 727, 735–736 (1994). The Pennsylvania Supreme Court agreed with the Wisconsin analysis, finding that an incompetent petitioner who is represented by counsel and a guardian ad litem would benefit by pursuing meritorious PCR claims while they are fresh. *Commonwealth v. Haag*, 570 Pa. 289, 809 A.2d 271 (2002).

■ We adopt the Wisconsin approach because we agree that a petitioner's mental incompetency does not impede his ability to assert his meritorious PCR claims. Therefore, we hold that a petitioner cannot delay his collateral review of his trial proceedings due to his incompetency. If, at a future date, the petitioner regains his competency and discovers that at his original PCR hearing, his incompetency prevented his ability to assist his counsel on a fact-based claim of ineffective assistance of counsel, he may then raise that claim in a subsequent proceeding.

## CONCLUSION

Based on the foregoing, we adopt the Wisconsin approach. Under this new approach, the default rule is that PCR hearings must proceed even though a petitioner is incompetent. For issues requiring the petitioner's competence to assist his PCR counsel, such as a fact-based challenge to his defense counsel's conduct at trial, the PCR judge may grant a continuance, staying the review of those issues until petitioner regains his competence. All other PCR claims will not be subject to a continuance based on a petitioner's incompetence.

In the case at hand, we find that respondent's incompetency will not inhibit his PCR challenge, as none of the issues presented for review require his competency to assist his counsel. Therefore, we **REVERSE** the PCR court's imposition of an indefinite stay of respondent's PCR proceedings and require respondent to proceed with his meritorious challenges at a PCR hearing.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.