632 S.E.2d 871

The STATE, Respondent,

v.

Tyree Alphonso ROBERTS, a/k/a Abdiyyah
Ben Alkebulanyahh, Appellant.

No. 26185.

Supreme Court of South Carolina.

Heard May 24, 2006.

Decided July 24, 2006.

Rehearing Denied Aug. 11, 2006.

Chief Attorney Joseph L. Savitz, III, and Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, all of Columbia, and Solicitor Isaac McDuffie Stone, III, of Beaufort, for Respondent.

Justice WALLER:

This is a capital case. Roberts was convicted of the murder of two Beaufort County Sheriff's Deputies and was sentenced to death. The sole issue he raises on appeal is whether the trial court erred in requiring him to remain present during the sentencing phase of his trial. We affirm the convictions and sentence.

## FACTS

In January 2002, Roberts lived in a trailer owned by Brenda Smith on Riley Road in Beaufort County. Also residing at the trailer were Smith's husband, Isaac, and Roberts' wife Nzuri. At the time of the crime in this case, a girl named Kimberly Blake, with whom Roberts had an infant daughter, was also staying there. On January 8, 2002, Kimberly Blake asked her friend, Strawberry Washington, to call police to come to the house to assist her in leaving because Roberts had hit her. Beaufort County Sheriff's Deputies Dyke Coursen and Dana Tate responded. According to Kimberly Blake, when police arrived, Roberts hid in the bedroom closet with his rifle. He gave Kimberly the okay to go out of the bedroom. She left the bedroom and Brenda Smith gave the officers permission to search the bedroom. Officers Coursen and Tate went into the bedroom. Smith and Blake heard gunshots. Blake ran outside and down the road. She was joined shortly after by Roberts coming through the woods with a gun in his hands. Roberts stated, "I just killed those two white bitches and I'm going to say it was self-defense." Blake left Roberts and returned to the scene to talk to police.

When backup officers responded to the scene, they found officers Coursen and Tate dead; Coursen had suffered six gunshot wounds, Tate had seven. Roberts was subsequently found hiding in the mud under a bridge with a shoulder and hip wound. Roberts was arrested. At the time, he had a black fanny pack carrying ammunition for an M–14 assault rifle, a cell phone and a knife. Police subsequently found a rifle magazine and an SKS assault rifle in the area in which Roberts had fled. The bullets and casings recovered from the victims and the scene of the crime were conclusively matched to the assault rifle.

Roberts was charged with capital murder. At the guilt or innocence phase of trial, he chose to represent himself. However, two attorneys remained as stand-by counsel to assist him at trial. While the jury was deliberating, Roberts indicated to the trial court that if the jury returned a guilty verdict, he did not intend to participate at sentencing. He also indicated he did not want his stand-by attorneys to present a defense. Roberts indicated that if the trial court required him to be present at the sentencing hearing, he would be unruly and would have to be restrained.

The jury convicted Roberts of two counts of murder. Roberts advised the court he did not intend to offer any mitigating evidence and expressed his desire to absent himself from the sentencing; he indicated he would probably be unruly if required to be present. Stand-by counsel conferred with Roberts and then advised the court as follows:

> He says that he doesn't agree to any changes in his status as attorney of record, and that if the court makes any change, they'll have to do it on their own motion ... and that if the judge—if the attorneys on stand-by are to perform in any capacity, the judge will have to order that on his own motion ... He says that he doesn't want to be present in this courtroom in order to hear the evidence in the second phase. And that if the judge—but he does not intend to disrupt the proceedings ... but if the judge determines that he should be in one of the side rooms ... that's a decision that his honor will have to make himself. He says that he is withdrawing from any further discussion with the court .... he does not intend to cooperate with stand-by counsel, to bring any witnesses....

The trial court was concerned with Roberts' decision, but was also disturbed that to appoint counsel to represent Roberts at sentencing might compromise his right to proceed pro se. Roberts continued to maintain that he did not intend to confront any witnesses, and did not want to see the witnesses. He persisted in advising the court that if forced to remain present, he would be disruptive. As neither party could point to specific case law governing the circumstances, the court determined the best course of action was to proceed with Roberts present in the courtroom, with the condition that if he became disruptive, the trial judge would take such action as

necessary. Roberts indicated his desire that counsel not represent him in any way, but ultimately decided counsel could remain as stand-by counsel to object to the introduction of improper evidence.

The sentencing proceeded with Roberts seated at counsel table. As soon as the first witness was sworn, Roberts stood and began to chant aloud, "Blessed be Yahweh, El Shaddai, Jehova, God Almighty, the God of Abraham, Isaac, Ishmael, Jacob, and Jesus." He was told by the court to be seated, and when he continued chanting, he was removed and a brief hearing was held in the hearing room at the back of the courtroom. Roberts was brought back into the courtroom and once again began chanting when the witness began to testify. The jury was removed, and Roberts was placed in a conference room at the back of the courtroom which had a glass partition to allow him to hear and see into the courtroom. He was initially restrained, but the restraints were removed before the jury was returned to the courtroom.

Throughout sentencing, the court offered to allow Roberts to come back into the courtroom if he could do so without being disruptive; however, Roberts indicated he would rather remain in the back room. Roberts ultimately returned to the courtroom to make a closing statement to the jury. After deliberations, the jury found the existence of the two aggravating circumstances and recommended a sentence of death. Roberts appeals.

## ISSUE

Did the trial court commit reversible error in refusing Roberts' request to be completely absent from sentencing?

## DISCUSSION

■■■ It is well-established that an accused may waive the right to counsel and proceed pro se. *State v. Reed,* 332 S.C. 35, 503 S.E.2d 747 (1998), *citing Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Although a defendant's decision to proceed pro se may be to his own detriment, it "must be honored out of that respect for the individual which is the lifeblood of the law." *Id.*

Citing *State v. Bell,* 293 S.C. 391, 360 S.E.2d 706, 711 (1987), Roberts asserts a defendant need not be present at all times

during a capital trial. We find *Bell* inapplicable to the facts of this case. There, the defendant twice disrupted the guilt-phase closing argument of his defense counsel, objecting to the trial proceeding on the Sabbath. After being warned against such conduct, Bell again disrupted the proceedings, and was removed to a holding cell without the benefit of any audio hookup. This Court held that the right to be present at trial could be waived, and that Bell's disruptive conduct amounted to a waiver of the right to be present at trial, such that he could not be heard to complain.

Although it may, under certain circumstances, be *permissible* to allow a capital defendant to be absent from trial, this does not mean there is a constitutional right to be absent. On the contrary, this Court has specifically held there is no constitutional right of a defendant not to be present at trial. *State v. Moore*, 308 S.C. 349, 417 S.E.2d 869. 308 S.C. 349, 417 S.E.2d 869 (1992).[1] Accordingly, no constitutional right of Roberts was violated by his continued presence at trial.[2]

Moreover, Roberts has demonstrated no prejudice from his continued attendance at trial; there is simply no basis to conclude that his death sentence resulted from his presence in a holding cell at the back of the courtroom. *Accord State v.*

---

1. The defendant in Moore asserted he had a right not to be present at trial in order to preclude an in-court identification of him by the State's witnesses. However, our holding in Moore unequivocally held there is *no* constitutional right not to be present at trial. Moore applies not only where the defendant wishes to prevent an identification, but applies with equal force in *any* case in which the defendant desires to absent himself from trial.

2. Moreover, Rule 16, SCRCrimP, states that, "except in cases wherein capital punishment is a permissible sentence, a person indicted for misdemeanors and/or felonies may voluntarily waive his right to be present and may be tried in his absence ..." In a similar situation, the *California Supreme Court* recently held a "capital defendant may not voluntarily waive his right to be present during ... those portions of the trial in which evidence is taken, and ... may not be removed from the courtroom unless he has been disruptive or threatens to be disruptive." *People v. Huggins*, 38 Cal.4th 175, 41 Cal.Rptr.3d 593, 131 P.3d 995 (2006). Similarly, the Alabama Court of Criminal Appeals has recognized that until 1997 (when Alabama Rules Crim. Proc., Rule 9.1(a), (b)(2) was amended), a defendant charged with a capital offense could not waive his right to be present at any phase of the capital trial. *Robitaille v. State*, —— So.2d ——, 2005 WL 3118795 (Ala.Crim.App. 2005).

*Kelly,* 331 S.C. 132, 502 S.E.2d 99 (1998), *cert. denied,* 525 U.S. 1077, 119 S.Ct. 816, 142 L.Ed.2d 675 (1999) (death penalty defendant failed to show prejudice from presence in jury room of religious pamphlet concerning God's view of death penalty, where misconduct did not affect jury's verdict).

## CONCLUSION

Roberts' convictions and sentence are affirmed. We have conducted the mandatory review required by S.C.Code Ann. § 16–3–25 (1985). The evidence indicates the sentence was not the result of passion, prejudice, or any other arbitrary factor, the evidence supports the finding of the aggravating circumstances, and the sentence is not disproportionate to that imposed in similar cases. *State v. Sapp,* 366 S.C. 283, 621 S.E.2d 883 (2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 2025, 164 L.Ed.2d 787 (2006); *State v. Hughes,* 336 S.C. 585, 521 S.E.2d 500 (1999), *cert. denied,* 529 U.S. 1025, 120 S.Ct. 1434, 146 L.Ed.2d 323 (2000); *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992); *State v. South,* 285 S.C. 529, 331 S.E.2d 775, *cert. denied* 474 U.S. 888, 106 S.Ct. 209, 88 L.Ed.2d 178 (1985).

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.