Mitchell J. **PETTINATO,**
# 218405, Petitioner,

v.

Willie **EAGLETON, Warden,**
**Respondent.**

C.A. No. 2:05–1226 PMD RSC.

United States District Court,
D. South Carolina.

Sept. 21, 2006.

Mitchell Pettinato, Bennettsville, SC, pro se.

Donald John Zelenka, S.C. Attorney General's Office, Columbia, S.C., for Respondent.

## *ORDER*

DUFFY, District Judge.

This matter is before the court upon the United States Magistrate Judge's recommendation that Mitchell J. Pettinato's ("Pettinato") petition under 28 U.S.C. § 2254 be dismiss as untimely. The record includes a report and recommendation ("R & R") of the Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A petitioner may object, in writing, to an R & R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Petitioner filed timely objections to the R & R on July 8, 2004.

## *BACKGROUND*

Pettinato is confined at the Kirkland Correctional Institution of the South Carolina Department of Corrections. In 1994, a Spartanburg County grand jury indicted Pettinato for murder and possession of a firearm during the commission of a violent crime. Attorney Don Thompson represented Pettinato at a jury trial before the Honorable J. Derham Cole on November 28, 1994. After the presentation of testimony but prior to final arguments, Pettinato withdrew his plea of not guilty and entered a plea of guilty but mentally ill. On November 30, 1994, Judge Cole sentenced Pettinato to life for murder and five years for possession of a firearm during

the commission of a violent crime, to run concurrently. Pettinato did not appeal his guilty plea or sentence.

On February 22, 1995, Pettinato filed his first application for post-conviction relief ("PCR") in state court. (95–CP–42–379), wherein he alleged the following 21 grounds for relief:

1. Ineffective assistance of counsel;

2. Denied due process of law;

3. Denied the right to be fully heard;

4. Denied the right to cross examine the witnesses against me when such cross examination would have proven in most cases that witnesses were committing perjury;

5. Although I cannot find anything in the law books regarding the behavior or the Judge and/or Prosecutor I do accuse the prosecution, acting improperly, if not plain unlawfully and using their positions to intimidate me, both while court was in session and in recess, this I believe denied me equal protection under the law;

6. Murder was an overcharge of the actual incident and correct charge should have been manslaughter;

7. Denied the right to speak while at my arraignment on charge of murder;

8. Defense did not adequately investigate my case nor did they subpoena evidence that I asked for;

9. I would like to challenge the validity have [sic] having the same punishment for someone found guilty in that guilty but mentally ill shows that a person is unable to conform to the law due to no fault of there [sic] own;

10. Failure to provide me with any warrants and/or indictments relating to the four gun charges;

11. Not advised of right to appeal;

12. Counsel failed to object to improper and false statements made by the prosecutor which prejudiced the jury;

13. Counsel failed to conduct a proper investigation both factual and legal, to determine if matters of defense could be developed, and to allow himself enough time for reflection and preparation for trial;

14. Counsel failed, after plaintiff's request to obtain or attempt to obtain a psychiatric evaluation by an independent psychiatrist where there was reasonable cause to believe that the report of the examining psychiatrist, who was employed by the State, was prepared for the prosecution's benefit and the evaluation was not properly conducted. Counsel should have known that plaintiff was entitled to an independent psychiatrist, under 18 U.S.C. § 3006A(c), who could supply expert services "necessary" to an adequate defense;

15. Counsel failed to move the court as to a reduced charge of voluntary manslaughter, while court was in session, although counsel claimed that he did, during recess, and the judge denied his request. This occurred just prior to guilty plea being entered;

16. Counsel gave erroneous advice when he told plaintiff that the court would only allow the jury to consider "not guilty," "guilty," and "guilty but mentally ill" as the only verdicts, and counsel should have known that "not guilty by reason of insanity" should have included or that plaintiff stood a good chance for a reversal on appeal;

17. Counsel failed to request the charge on murder v. manslaughter required by *State v. King;*

18. Denied "due process of law"— Plaintiff was denied "due process of law" as he was incompetent to stand trial and was not criminally responsible for his actions due to mental illness . . . ;

19. Abuse of discretion—it was "abuse of discretion" to allow plaintiff to stand trial for three gun charges that were brought to plaintiff's attention for the first time at his trial;

20. *White v. State* Review—Plaintiff is seeking, and believes he is entitled to a "White v. State Review" so he may raise his appealable issues, as Plaintiff did not knowingly and intelligently waive his right to direct appeal. Rule 227(6) Appellate Court Rules;

21. Plaintiff contends that he is being held in custody illegally as he is unable to legally plead guilty but mentally ill, and he cannot be held responsible for his actions when he wasn't fully aware of what he was doing an did not have sufficient internal controls over his actions to conform them to the requirements of law.

On March 20, 1996, the Honorable Paul M. Burch held an evidentiary hearing, at which Attorney Michael Duncan represented Pettinato. Pettinato testified on his own behalf and called his trial attorney to testify. Thereafter, on April 26, 1996, Judge Burch issued an order of dismissal, dismissing the application in its entirety. Following this dismissal, Pettinato filed a timely notice of appeal. On October 8, 1996, Pettinato's attorney, Lisa T. Gregory, filed a *Johnson* petition for a writ of certiorari and a petition to be relieved as counsel. By Order dated February 21, 1997, the South Carolina Supreme Court denied the *Johnson* petition and granted counsel's request to withdraw.[1]

On August 4, 1997, Pettinato, proceeding *pro se,* filed his first federal habeas corpus petition. On November 3, 1997, Pettinato filed a motion to hold the matter in abeyance to allow him to file a second PCR action to allege, *inter alia,* ineffective assistance of counsel at the PCR hearing and on appeal. On March 26, 1998, then Magistrate Judge, now United States District Judge, Margaret B. Seymour denied Pettinato's motion to stay. Pettinato then moved, on May 4, 1998, to dismiss his habeas corpus petition without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. This court granted Pettinato's motion and dismissed the petition on September 29, 1998.

---

**1.** In Pettinato's Objections to the R & R, he first objects that Magistrate Judge Carr incorrectly cited February 2, 1997, as the date the Supreme Court denied certiorari on his first PCR, when in fact, the Supreme Court denied certiorari on February 21, 1997. Pettinato is correct in this assertion; it appears that the Magistrate Judge's reference to February 2, 1997, instead of February 21, 1997, likely resulted from a typographical error or oversight. Nevertheless, this oversight had no effect on the Magistrate Judge's conclusion, as Pettinato's petition is untimely with respect to either date.

Additionally, Pettinato asserts that certiorari was denied on February 21, 1997, but that his appeal was dismissed on March 11, 1997, and therefore, the triggering date for the statute of limitations should be either of those dates. The court has before it only the February 21, 1997, South Carolina Supreme Court Order, and therefore, the court relies on this date. Ultimately, however, it does not matter which date the court relies upon because, as explained more thoroughly in this Order, Pettinato's second PCR was still filed more than one year after July 1, 1996.

Meanwhile, on November 6, 1997, Pettinato filed his second PCR application in state court, alleging, *inter alia*, ineffective assistance of trial counsel, ineffective assistance of PCR counsel, ineffective assistance of appellate counsel, and involuntary guilty plea. The Honorable Lee S. Alford held an evidentiary hearing on March 28, 2000. On June 19, 2000, Judge Alford filed an order dismissing Pettinato's second PCR application, finding that the petition was barred as successive and that Pettinato failed to present evidence to support his claim that his PCR attorney was ineffective. On May 11, 2001, the South Carolina Supreme Court dismissed Pettinato's appeal without prejudice pending resolution of a Rule 59 motion. It appears from the record that the Rule 59 motion was not ruled upon and remains pending.

On May 26, 2000, Pettinato filed his second federal habeas corpus petition. On August 29, 2000, Pettinato again moved for dismissal without prejudice. On September 25, 2000, this court granted Pettinato's motion.

Subsequently, on January 10, 2001, Pettinato filed his third PCR application, alleging ineffective assistance of trial counsel, involuntary guilty plea, violation of due process, and the state court's lack of subject matter jurisdiction over his criminal case. On September 3, 2003, the Honorable J. Michael Baxley held an evidentiary hearing, at which Attorney N. Douglass Brannon represented Pettinato. Thereafter, on November 3, 2003, Judge Baxley filed an order denying Pettinato's third PCR application as successive and time-barred.

On March 18, 2004, Pettinato's attorney, Aileen Clare, filed a *Johnson* petition for writ of certiorari and petition to be relieved as counsel. Pettinato filed a *pro se* brief on appeal. On February 3, 2005, the South Carolina Supreme Court entered its Order denying the petition for writ of certiorari and granting counsel's request to be relieved. The Remittitur was sent down on February 22, 2005.

Finally, on April 28, 2005, Pettinato filed the present habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging numerous grounds for relief.[2] Pettinato amended his petition on June 27, 2005. Thereafter, on January 6, 2006, Respondent Willie Eagleton ("Respondent" or "Eagleton") filed a motion for summary judgment, wherein he argues that Pettinato's entire petition "is without merit and must be dismissed either on the merits for claims actually raised and decided in the initial PCR action in 1997 or procedurally barred if sought to be raised in either the 1998 or 2000 state PCR actions or are not cognizable in a federal habeas corpus action." (Mot. at 18.) Respondent only raises the issue of timeliness in his conclusion, where he asserts that any claim not raised in Pettinato's first PCR proceeding is procedurally barred or time-barred under S.C.Code Ann. § 17–27–45. (Mot. at 35.) Pettinato filed his response in opposition to the motion for summary judgment on March 8, 2006. Subsequently, on June 19, 2006, the Magistrate Judge issued his R & R, wherein he recommends dismissal of Pettinato's § 2254 petition as untimely.

**2.** In the R & R, the court relies upon Respondent's recitation of Pettinato's grounds for relief. (R & R at 10–16.) While this recitation reflects in large part Pettinato's grounds for relief, it does not constitute an exact quotation of the grounds set forth in Pettinato's Amended Petition for Writ of Habeas Corpus. Due to the slight inconsistencies between the versions, this court incorporates by specific reference Pettinato's grounds for relief as set forth in his Amended Petition for Writ of Habeas Corpus on pages 6 through 22, rather than Respondent's recitation, which the Magistrate Judge quoted.

Pettinato filed several objections to the R & R.

## STANDARD OF REVIEW

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R & R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendation contained in the R & R. 28 U.S.C. § 636(b)(1). After a review of the entire record, including Pettinato's objections, the court finds the Magistrate Judge's analysis lacking in several respects, and therefore, the court expounds upon the Magistrate Judge's determination that Pettinato's petition is untimely under the AEDPA. Next, in considering Pettinato's objections, the court finds Pettinato entitled to equitable tolling due to his diligence and extraordinary circumstances. Accordingly, the court remands the matter to the Magistrate Judge for a full consideration of the merits of both Pettinato's § 2254 petition and Respondent's motion for summary judgment.

## DISCUSSION

### I. The Magistrate Judge's Conclusion

In the R & R, the Magistrate Judge found that Pettinato's second PCR application was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) because it was untimely under South Carolina law. (R & R at 18.) Accordingly, the Magistrate Judge concluded that the statute of limitations continued to run during the pendency of Pettinato's second PCR action, and therefore, Pettinato filed the present § 2254 petition almost nine years too late. The court expounds upon the Magistrate Judge's summary conclusion with the following discussion and application of the law.

### A. The AEDPA's Statute of Limitations

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), as amended in 1996, a one-year period of limitation applies to an application for "a writ of habeas corpus by a person in custody pursuant to the judgment of a state court." 28 U.S.C. § 2244(d)(1). The limitation period for filing a § 2254 petition concerning a specific state court judgment begins to run from the latest of four possible dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D). "[P]risoners whose convictions became final any time prior to the effective date of the AEDPA had until April 23, 1997, to file their ... § 2255 motion[s]." *Brown v. Angelone*, 150 F.3d 370, 375 (4th Cir.1998). Additionally, § 2244(d)(2) provides that its one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other col-

lateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). "[U]nder § 2244(d)(2) the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review), is tolled from the limitations period for federal habeas corpus petitioners...." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir.1999).

In the present case, Pettinato's conviction became final prior to the effective date of the AEDPA, and therefore, as the *Magistrate Judge correctly pointed* out, Pettinato's limitations period began to run on April 24, 1996, the effective date of the AEDPA. *See Brown v. Angelone,* 150 F.3d 370, 375 (4th Cir.1998). Thus, Pettinato's limitations period expired on April 24, 1997, unless a properly filed state PCR application tolled the period at any time. *See* 28 U.S.C. § 2244(d)(2). Here, a properly filed PCR application was pending until February 21, 1997, when the Supreme Court of South Carolina denied Pettinato's petition for a writ of certiorari. Because this first PCR application was properly filed, Pettinato had until February 22, 1998, to timely file his § 2254 petition.

As previously outlined in the background section of this Order, Pettinato did bring a timely § 2254 petition on Aug. 4, 1997. However, on November 3, 1997, Pettinato filed a motion to hold the matter in abeyance to allow him to file a second state PCR application. The court denied Pettinato's motion to stay on March 26, 1998. Subsequently, on May 4, 1998, Pettinato moved to dismiss his habeas petition without prejudice pursuant to Rule 41(a)(2). Magistrate Judge Seymour prepared an R & R in which she recommended that Pettinato's motion to dismiss be granted to allow him to exhaust his state remedies, finding specifically that Pettinato's allegation that he was denied due process because he was not competent at the PCR hearing was not "obviously frivolous."[3] Upon a review of the R & R and Pettinato's objections, this court granted Pettinato's motion to dismiss without prejudice on September 29, 1998.

Next, Pettinato filed a second PCR application on October 16, 1997. In order to toll the statute of limitations, this second PCR application must have been "properly filed." *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Here,

---

**3.** At the time of the court's decision to dismiss Pettinato's petition without prejudice for him to pursue this claim, the South Carolina Supreme Court had not yet addressed the issue of whether a prisoner must be competent to collaterally challenge a conviction. However, in 2004, the court did address this question, finding that it was error for a PCR judge to grant a prisoner's motion to stay PCR proceedings indefinitely until the prisoner regained competency. *Council v. Catoe,* 359 S.C. 120, 597 S.E.2d 782 (2004). Specifically, the court found that because a PCR action is a civil action, "the constitutional protections that forbid a criminal trial of a mentally

incompetent defendant do not apply." *Id.* at 125, 597 S.E.2d at 784–85. Thus, the court held: "a petitioner cannot delay his collateral review of his trial proceedings due to his incompetency. If, at a future date, the petitioner regains his competency and discovers that at the original PCR hearing, his incompetency prevented his ability to assist his counsel on a fact-based claim or ineffective assistance of counsel, he may then raise that claim in a subsequent proceeding." *Id.* at 129, 597 S.E.2d at 787. The court did not mention whether the statute of limitations would apply to any subsequent proceeding.

the Magistrate Judge, without a great deal of explanation,[4] concluded that this second PCR application was not properly filed because it was untimely under South Carolina law. *See* S.C.Code Ann. § 17–27–45(a); *see also Green v. State,* 353 S.C. 29, 30, 576 S.E.2d 182, 183 (2003) ("stating that § 17–27–45(a) does not provide for tolling the statute of limitations where an applicant seeks federal habeas relief prior to exhausting his state remedies.").

With regard to the meaning of "properly filed," the United States Supreme Court has held that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually proscribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett,* 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000); *see also McSheffrey v. Angelone,* 172 F.3d 863, *2 (4th Cir. Feb. 23, 1999) ("A state application is properly filed if it complies with the state procedural requirements for successive collateral attacks on a conviction, such as timeliness and proper place of filing.").

In *Carey v. Saffold,* the United States Supreme Court rejected the Ninth Circuit's conclusion that the California state court's decision to deny Saffold's state petition "on the merits" constituted an implicit ruling that the state petition was timely. 536 U.S. 214, 225, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). The Court stated:

> A court will sometimes address the merits of a claim that it believes was presented in an untimely way: for instance, where the merits present no difficult issue; where the court wants to give a

reviewing court alternative grounds for decision; or where the court wishes to show a prisoner (who may not have a lawyer) that it is not merely a procedural technicality that precluded him from obtaining relief. Given the variety of reasons why the California Supreme Court may have included the words "on the merits," those words cannot by themselves indicate that the petition was timely. And the Ninth Circuit's apparent willingness to take such words as an absolute bellwether risks the tolling of the federal limitations period even when it is highly likely that the prisoner failed to seek timely review in the state courts. *Id.* at 225–26, 122 S.Ct. 2134; *see also Baker v. Horn,* 383 F.Supp.2d 720, 741 (E.D.Pa.2005) ("Thus, even though the Pennsylvania Supreme Court declined to dispose of Baker's case on the ground that Baker had withdrawn his petition, such treatment does not constitute an implicit ruling that Baker's petition was timely."). A few years after *Saffold,* the Supreme Court, in a divided opinion, held that "[w]hen a postconviction petition is untimely under state law, 'that is the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo,* 544 U.S. 408, 414, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (quoting *Carey v. Saffold,* 536 U.S. 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)). Four members of the court dissented, stating:

> Under the interpretation of that statutory provision adopted by the Court today, a petition for state postconviction relief does not constitute a "properly filed application for ... collateral review," even if the application has been accepted, filed, and reviewed in full by the state

---

**4.** For instance, the Magistrate Judge did not mention the fact that the state court heard Pettinato's second PCR application and addressed it on the merits. Additionally, the Magistrate Judge did not mention that the second PCR was the subject of a still-pending Rule 59 motion.

court. The Court's chosen rule means that a state application will not be deemed properly filed-no matter how long the state court has held the petition, how carefully it has reviewed the merits of the petition's claims, or how it has justified its decision-if the court ultimately determines that particular claims contained in the application fail to comply with the applicable state statute of limitations. The court's interpretation of § 2244(d)(2) is not compelled by the text of that provision and will most assuredly frustrate its purpose.

*Id.* at 420, 125 S.Ct. 1807 (Stevens, J., Souter, J., Ginsburg, J., and Breyer, J., dissenting).

Here, because the state court considered the merits of Pettinato's second PCR application and did not clearly rule on its timeliness, it seems that it is this court's responsibility to consider whether the second PCR application was timely filed as a matter of South Carolina law before tolling the AEDPA limitations period. *See Merritt v. Blaine*, 326 F.3d 157, 167 (3d Cir. 2003) ("[W]e must look to state law to determine whether the state petition is 'properly filed.' "); *Fahy v. Horn*, 240 F.3d 239, 243–44 (3d Cir.2001) ("The AEDPA['s statutory tolling provision] requires us to interpret state law as we do when sitting in diversity cases."); Baker, 383 F.Supp.2d at 738 ("If a state court has rejected a postconviction petition as untimely under state law, the petition was not 'properly filed,' and the petitioner cannot be entitled to statutory tolling under § 2244(d)(2). On the other hand, when a state court has not 'clearly ruled' on the timeliness of a state petition, it is the responsibility of the habeas court to consider whether the state postconviction petition was timely filed as

a matter of state law before tolling the AEDPA limitations period.").

**B. South Carolina Procedural Rules for PCR Application(s)**

On July 1, 1995, the first statute of limitations for post-conviction relief actions in South Carolina became effective. *See* S.C.Code Ann. § 17–27–45(a). This section provides that an application for PCR "must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later." S.C.Code Ann. § 17–27–45(a). Because Pettinato was convicted before the effective date of this statute, he had one year from the effective date within which to file an application—in other words, Pettinato had until July 1, 1996 within which to file a timely PCR application. *See Peloquin v. State*, 321 S.C. 468, 470, 469 S.E.2d 606, 607 (1996) ("[A]ll those convicted prior to the effective date of [S.C.Code Ann. § 17–27–45(a) ] should be allowed one year after its effective date to file an application.").

Here, Plaintiff timely filed his first PCR application on February 22, 1995, before enactment of S.C.Code Ann. § 17–27–45(a). The Supreme Court of South Carolina finally denied Pettinato's *Johnson* petition on February 21, 1997. Then, on October 16, 1997, Pettinato brought his second PCR action. Because Pettinato filed this second application after July 1, 1996, it seems that it was untimely under South Carolina law. However, because Pettinato raised claims including, *inter alia*, the issue of ineffective assistance of PCR counsel in this second PCR application, the court must consider whether any of his claims affect the timeliness of the petition.[5]

---

**5.** As a practical matter, the court notes that it

does not have a copy of Pettinato's second

In *Austin v. State,* the Supreme Court of South Carolina reversed the summary dismissal of a second PCR application and remanded for an evidentiary hearing, where the petitioner alleged in his second application that his first PCR counsel was ineffective for failing to seek appellate review. 305 S.C. 453, 409 S.E.2d 395 (1991). Specifically, the court stated: "Because petitioner is entitled to the assistance of appellate counsel on PCR, and because we must craft a remedy to correct the unfairness which has occurred, we find his allegation that counsel failed to seek review in this case sufficiently states a claim for ineffective assistance." *Austin,* 305 S.C. at 454, 409 S.E.2d at 396. Thus, "[u]nder *Austin,* a defendant can appeal a denial of a PCR application after the statute of limitations has expired if the defendant either requested and was denied an opportunity to seek appellate review, or did not knowingly and intelligently waive the right to appeal." *Odom v. State,* 337 S.C. 256, 260, 263, 523 S.E.2d 753, 755, 756 (1999) ("The one-year statute of limitations for PCR applications is not applicable to appeals filed pursuant to *Austin v. State.*"); *see also Whitehead v. State,* 352 S.C. 215, 219, 574 S.E.2d 200, 202 (2002) ("We have held that the PCR statute of limitations found in S.C.Code Ann. § 17–27–45(A) (Supp. 2001) does not apply to *Austin* claims.").

In *Aice v. State,* the Supreme Court of South Carolina limited the holding of *Austin* to its particular factual situation, or in other words, to the situation where the petitioner is prevented from seeking appellate review of a denial of his or her PCR application by the action or inaction of his or her attorney. 305 S.C. 448, 452, 409 S.E.2d 392, 395 (1991). In *Aice,* the petitioner sought to file a second PCR application raising additional issues not raised in the first PCR under the rubric of ineffective assistance of the first PCR trial counsel. 305 S.C. at 449, 409 S.E.2d at 393. The court pointed out that section 17–27–90 provides:

> All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

S.C.Code Ann. § 17–27–90. However, the court stated that it has interpreted § 17–27–90 and the phrase "sufficient reason" very narrowly. 305 S.C. at 450, 409 S.E.2d at 394. Then, the court distinguished *Aice* and *Austin,* noting that "Austin never received a full 'bite' at the apple, as he was prevented from seeking any review of the denial of his PCR application," whereas

---

PCR application properly before it. Thus, there may be some issue regarding the substance or actual claims contained in this application as it is not clear whether Pettinato asserted that he was incompetent at his first PCR proceedings or whether he asserted that § 17–27–45(c) rendered his petition timely. With regard to Pettinato's competency, the South Carolina Supreme Court stated that a petitioner who "regains his competency and discovers that at the original PCR hearing, his incompetency prevented his ability to assist his counsel on a fact-based claim or ineffective assistance of counsel, he may then raise that claim in a subsequent proceeding." *Council,* 359 S.C. at 129, 597 S.E.2d at 787. Thus, while uncertainty exists, the court has some reason to believe that the South Carolina Supreme Court may allow a claim of this nature to proceed even after the statute of limitations in S.C.Code Ann. § 17–27–45(a) had run.

Aice had "filed an original PCR application, and [had] been allowed to seek review of the ruling against him." 305 S.C. at 452, 409 S.E.2d at 395; *see also Gamble v. State,* 298 S.C. 176, 178, 379 S.E.2d 118, 119 (1989) (holding that the PCR rules "contemplate an adjudication on the merits of the original petition, one bite of the apple as it were."). Accordingly, the court held that a successive application was not allowed on this basis. *Id.*

Subsequently, in *Odom v. State,* the South Carolina Supreme Court reversed a PCR judge's order of dismissal, finding that the petitioner never received a full "bite at the apple" because both of his PCR applications were summarily dismissed before he was appointed legal counsel. 337 S.C. 256, 262, 523 S.E.2d 753, 756 (1999). Thus, the court found that "Odom's *Austin* appeal is attacking the PCR *procedure* used in his case, not the *merits* of his sentence so the one-year statute of limitations [ ] is not applicable." *Id.* at 263, 523 S.E.2d at 757. The court stated, "Odom claims that he was denied the right to appeal which was a procedural error preventing his fair 'bite' at the apple. *Austin's* policy would be frustrated if the one-year statute of limitations applied to procedural errors made by the PCR courts." *Id.*

In the present case, Pettinato, like Aice, clearly received a full bite at the apple, in that he timely filed an original PCR application, was represented by counsel, and sought review of the ruling with the Supreme Court of South Carolina. Thus, he does not and cannot claim in his second PCR petition either that he requested and was denied an opportunity to seek appellate review or that he did not knowingly and intelligently waive the right to appeal.

Accordingly, upon the record currently before the court, the court finds that Pettinato's second PCR did not effectively attack the PCR *procedure* used in his case. Because *Austin* is limited to its facts, the court finds, therefore, that Pettinato's second PCR application did not constitute an *Austin* appeal, to which the statute of limitations would not apply. Accordingly, because the statute of limitations had expired on July 1, 1996, the court believes that Pettinato's second PCR was not "properly filed" according to S.C.Code Ann. § 17–27–45(a). Therefore, this second PCR did not toll his time for filing under the AEDPA.[6] *See Artuz,* 531 U.S. at 9, 121 S.Ct. 361 ("If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be *pending,* but not *properly filed.*") (emphasis in original); *see also McSheffrey,* 172 F.3d 863 ("A state application is properly filed if it complies with the state procedural requirements for successive collateral attacks on a conviction, such as timeliness and proper place of filing."). Ultimately, without statutory tolling, Pettinato's present § 2254 petition, filed on April 28, 2005, is untimely.

## II. Pettinato's Objections and Equitable Tolling

In his objections to the R & R, Pettinato asserts that even if his second PCR was not "properly filed," principles of equitable tolling should apply. The court, therefore, addresses whether principles of equitable tolling salvage his otherwise untimely § 2254 petition.

█ Generally, a petitioner seeking equitable tolling bears the burden of estab-

---

6. It seems that had Pettinato's second PCR been "properly filed," his statute of limitations could be tolling at this very moment, due to the alleged unresolved Rule 59(e) motion.

lishing (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace,* 544 U.S. at 418, 125 S.Ct. 1807 (citation omitted). Equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir.2003) (en banc) (quotation marks omitted), *cert. denied,* 516 U.S. 832, 116 S.Ct. 107, 133 L.Ed.2d 60 (1995); *see also United States v. Sosa,* 364 F.3d 507, 512 (4th Cir.2004) (quoting the same). Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present: "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse,* 339 F.3d at 246.

Here, the court finds that Pettinato has been pursuing his rights diligently. He filed his first PCR application approximately three months after he was sentenced. The South Carolina Supreme Court ultimately denied this application on February 21, 1997, and less than six months later, he timely filed his first federal habeas action in this court. Then, on November 3, 1997, believing he needed to exhaust more of his state remedies, Pettinato filed a motion to hold his habeas petition in abeyance pending exhaustion of state claims. The court denied Pettinato's motion on March 26, 1998. Thereafter, the court granted Pettinato's motion to dismiss to allow him to further exhaust his state claims, finding specifically that Pettinato's due process claim was not "obviously frivolous."

Further complicating the record, Pettinato filed his second PCR application, which this court now finds was not "properly filed." However, the state court never clearly ruled on the timeliness issue, and more importantly, the state court has yet to rule on a pending Rule 59(e) motion that seems to somehow have gotten lost in the mix.

The Supreme Court has addressed the apparent unfairness of the situation where petitioners spend years exhausting their state remedies only to later discover that their federal habeas relief is time-barred because the state petition was never "properly filed." *See Pace,* 544 U.S. at 416, 125 S.Ct. 1807. Specifically, the Supreme Court stated: "A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Id.* (citation omitted); *see also Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."). In *Pace,* the Supreme Court stated, "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace,* 544 U.S. at 416, 125 S.Ct. 1807.

Ultimately, in *Pace,* the Supreme Court refused to apply equitable tolling to save a federal habeas petition because it found that the petitioner had not pursued his rights diligently. 544 U.S. at 418, 125 S.Ct. 1807. The Supreme Court stated, "not only did petitioner sit on his rights for years *before* he filed his PCRA petition, but he also sat on them for five more months *after* his PCRA proceedings became final before deciding to seek relief

federal court. Under long-established principles, petitioner's lack of diligence precludes equity's operation." *Id.* at 419, 125 S.Ct. 1807.

This court has come across only one case with facts somewhat similar to the present case. *See Baker,* 383 F.Supp.2d 720. In *Baker,* the District Court for the Eastern District of Pennsylvania determined that the petitioner was not entitled to statutory tolling because his PCR petition had not been timely filed as a matter of Pennsylvania law. *Id.* at 743. In evaluating whether the petitioner was entitled to equitable tolling, the court found that the petitioner had pursued his rights diligently. *Id.* at 746. Then the court differentiated between the petitioner's capital convictions and the petitioner's non-capital convictions. *Id.* at 746–49. The court found that according to Third Circuit law, in the context of a capital case, "less than extraordinary circumstances may trigger equitable tolling of the AEDPA statute of limitations when rigid application of the statute would be unfair." *Id.* at 746 (quoting *Fahy,* 240 F.3d at 245) (quotations omitted). In considering the fact that the petitioner had filed a timely "protective" federal petition, which the court had dismissed, just like in the present case, the court stated, "it would be unfair to Baker not to toll the statute of limitations because it is now clear that Baker was correct to argue that his first federal petition should not have been dismissed but should have been held in suspense while he exhausted his remaining state claims." *Id.* at 747. Therefore, with respect to Baker's capital conviction, the court found that "[i]t is clear that Baker meets the lower threshold of unfairness, if not the higher standard of extraordinary circumstances, nec-

essary for equitable tolling in capital cases." *Id.*

However, in addressing the petitioner's challenge to non-capital convictions, to which the Third Circuit applies the stricter "extraordinary circumstances" standard, the court determined that the uncertainty of Pennsylvania law regarding whether a second PCR petition would be accepted did not constitute an extraordinary circumstance preventing the petitioner from bringing his claims. *Id.* at 748. Likewise, the court stated, "[t]he fact that I dismissed Baker's timely first federal petition also does not constitute an 'extraordinary circumstance' that prevented Baker from asserting his claims." *Id.* at 748. The court explained:

> My dismissal of Baker's first federal petition, while in hindsight unfair, is more analogous to the situation recently discussed by the Supreme Court in *Gonzalez v. Crosby,* 545 U.S. 524, 125 S.Ct. 2641, 2650–51, 162 L.Ed.2d 480 (2005). In *Gonzalez,* the Supreme Court concluded that a district court's dismissal of a non-capital habeas petition under a presumptively incorrect governing Eleventh Circuit precedent did not constitute "extraordinary circumstances" for purposes of Fed.R.Civ.P. 60(b). The Court ruled it was not "extraordinary that subsequently, after petitioner's case was no longer pending, [the Supreme] Court arrived at a different interpretation [than the Eleventh Circuit.]" Similarly, it is not "extraordinary" that the treatment of Baker's timely first federal petition would be different today.

*Id.* at 748–749 (internal citations omitted). Accordingly, the court in *Baker* found that the petitioner was not entitled to equitable tolling with respect to his non-capital convictions.[7] *Id.*

---

**7.** In *Rouse v. Lee,* the Fourth Circuit Court of Appeals declined to adopt an equitable tolling test that would consider the nature of the petitioner's claims. 339 F.3d 238, 250 (4th

In the present case, contrary to the result in *Baker*, the court finds that this court's dismissal of Pettinato's timely filed federal habeas petition,[8] coupled with the fact that the state court did not specifically find Pettinato's second PCR untimely[9] and still has yet to rule upon a Rule 59(e) motion almost six years after it was filed,[10] constitute extraordinary circumstances supporting equitable tolling. As previously mentioned, like in *Baker*, Pettinato filed a timely petition for federal habeas corpus relief, moved to hold it in abeyance for him to continue exhausting state remedies, and this court denied his request and dismissed his petition without prejudice. It is clear from recent Supreme Court opinions that under the present circumstances, it would have been proper for the court to hold the matter in abeyance pending resolution of Pettinato's second PCR. Thus, had this court granted Pettinato's motion to hold the matter in abeyance, his federal petition would have been timely filed, even though this court still would be waiting for the state court's resolution of a pending Rule 59 motion. Instead, this court dismissed not only Pettinato's first federal petition, but also his second federal petition, to allow him to continue exhausting his state claims. The court did not consider whether Pettinato's second PCR application was "properly filed" when it dismissed his federal petitions and instructed him to continue exhausting his claims in state court, and therefore, Pettinato continued to exhaust his claims in state court only to discover

Cir.2003). The court stated, "Neither Supreme Court precedent nor precedent from this court supports applying a different test to capital cases on collateral review." *Id.* at 254. Thus, in the Fourth Circuit, courts do not differentiate between capital and non-capital cases for purposes of the application of equitable tolling for cases on collateral review.

8. Also, the court notes that in addition to his federal petition filed on August 4, 1997, Pettinato filed a second federal petition on May 26, 2000. Similar to the first petition, this court dismissed this second petition without prejudice on September 25, 2000, to allow Pettinato to continue exhausting his claims in state court; the court made no mention of the fact that his second PCR was not "properly filed" and would not toll his statute of limitations pursuant to the AEDPA.

9. The court acknowledges that Petitioner asserts that his second and third PCR applications were both timely pursuant to S.C.Code Ann. § 17–27–45(c), which allows the filing of a PCR application within one year of the date of actual discovery of facts not previously presented and heard or one year after the date when the facts could have been ascertained by the exercise of reasonable diligence. The parties have not provided the court with a copy of Petitioner's second PCR application

or the state court's Order of dismissal filed July 20, 2000. Without the benefit of these documents, some uncertainty exists as to the merits of Pettinato's argument. And while the court believes it unlikely that Pettinato's second PCR was timely pursuant to § 17–27–45(c), the slight uncertainty in the matter counsels in favor of equitable tolling.

10. Without a doubt, this case would be much easier to digest had the state court, in a timely manner, ruled upon Petitioner's Rule 59 motion, which was filed on July 31, 2000. Assuming the state court denied this motion, Pettinato then could have refiled his *Johnson* petition with the South Carolina Supreme Court. Assuming the Supreme Court denied his petition, as is likely under the circumstances, Pettinato's current § 2254 petition clearly would be untimely under the AEDPA because the state court denied Pettinato's third PCR application as successive and time-barred, rendering it not "properly filed." Pettinato filed the third petition on January 10, 2001, but because it was not "properly filed," it would not toll his AEDPA statute of limitations, and therefore, his current § 2254 petition, filed on April 28, 2005, would in no way be considered timely. Because the application of equitable tolling is so fact intensive, had the circumstances regarding the Rule 59 motion been different, this court's application of equitable tolling likewise may have been different.

years later that his second PCR application, which allegedly is still the subject of a pending Rule 59 motion, was never "properly filed." This court believes that these circumstances, when considered in their totality, are exactly the sort of "extraordinary circumstances" beyond Pettinato's control which justify equitable tolling.[11] Accordingly, this court finds that equitable tolling is warranted under the particular facts of this case, namely, where the petitioner pursued his rights diligently and attempted to hold his timely federal petition in abeyance, which is that which the Supreme Court now recommends for a petitioner to do under these circumstances; where this court twice dismissed without prejudice the petitioner's federal petitions with no consideration of the fact that his second PCR was not "properly filed;" and where the state court failed to timely rule upon a *still-pending* Rule 59 motion on the petitioner's second PCR application. Finding that equitable tolling applies to the current § 2254 petition, the court, therefore, remands the matter to the Magistrate Judge for a full consideration of the merits of *Pettinato's petition as well as* Respondent's motion for summary judgment. The court would benefit greatly from the Magistrate Judge's complete and well-supported analysis of his decision on remand.

### CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that the Magistrate Judge's R & R is adopted *only* to the extent it is consistent with this Order. However, finding the petitioner entitled to equitable tolling, the court **REMANDS** the matter to the Magistrate Judge for a full consideration of the merits of the petitioner's § 2254 petition as well as Respondent's motion for summary judgment.

**AND IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION

CARR, United States Magistrate Judge.

This habeas corpus petition under 28 U.S.C. § 2254 filed April 28, 2005, by a state prisoner proceeding *pro se* is before the undersigned United States Magistrate Judge for a report and recommendation on the respondents' summary judgment motion filed on January 6, 2006. 28 U.S.C. § 636(b).

### PROCEDURAL HISTORY

The petitioner, Mitchell Pettinato, is currently confined at the Kirkland Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Spartanburg County. Petitioner was indicted at the July 1994 term of the Court of General Sessions for Spartanburg County for murder and possession of a firearm during the commission of a violent crime. Don Thompson, Esquire, represented Petitioner on the charges. Petitioner proceeded to trial before a jury and the Honorable J. Derham Cole on November 28, 1994. After all testimony had been presented, but prior to final arguments, Petitioner,

---

11. Additionally, the court notes that when it denied Pettinato's motion to hold his first federal petition in abeyance (November 3, 1997) and when the court dismissed Pettinato's first federal petition without prejudice (September 29, 1998), Pettinato's second PCR, filed on October 16, 1997, could not have been timely filed under the court's reasoning in this Order because he needed to

have filed it before July 1, 1996, pursuant to S.C.Code Ann. § 17-27-45(a). The South Carolina Supreme Court determined in 1996 that "all those convicted prior to the effective date of [S.C.Code Ann. § 17-27-45(a)] should be allowed one year after its effective date to file an application." *Peloquin,* 321 S.C. at 470, 469 S.E.2d at 607.

pursuant to negotiations with the state, withdrew his plea of not guilty and entered a plea of guilty but mentally ill. (App. p. 382). Judge Cole sentenced Petitioner to life for murder and five (5) years, concurrent, for possession of a firearm during the commission of a violent crime. Petitioner did not appeal his guilty pleas or sentence.

On February 22, 1995, Petitioner filed an Application for Post–Conviction Relief. (95–CP–42–379). In his application and a subsequent amended application, Petitioner alleged he was being unlawfully held for the following reasons:

1. Ineffective assistance of counsel;

2. Denied due process of law;

3. Denied the right to be fully heard;

4. Denied the right to cross examine the witnesses against me when such cross examination would have proven in most cases that witnesses were committing perjury;

5. Although I cannot find anything in the law books regarding the behavior of the Judge and/or Prosecutor I do accuse the prosecution, acting improperly, if not plain unlawfully and using their positions to intimidate me, both while court was in session and in recess, this I believe denied me equal protection under the law;

6. Murder charge was an overcharge of the actual incident and correct charge should have been manslaughter;

7. Denied the right to speak while at my arraignment on charge of murder;

8. Defense did not adequately investigate my case nor did they subpoena evidence that I asked for;

9. I would like to challenge the validity have [sic] having the same punishment for someone found guilty in that guilty but mentally ill shows that a person is unable to conform to the law due to no fault of there [sic] own;

10. Failure to provide me with any warrants and/or indictments relating to the four gun charges;

11. Not advised of right to appeal;

12. Counsel failed to object to improper and false statements made by the prosecutor which prejudiced the jury;

13. Counsel failed to conduct a proper investigation both factual and legal, to determine if matters of defense could be developed, and to allow himself enough time for reflection and preparation for trial;

14. Counsel failed, after plaintiff's request to obtain or attempt to obtain a psychiatric evaluation by an independent psychiatrist where there was reasonable cause to believe that the report of the examining psychiatrist, who was employed by the State, was prepared for the prosecution's benefit and the evaluation was not properly conducted. Counsel should have known that plaintiff was entitled to an independent psychiatrist, under 18 U.S.C. § 3006A(c), who could supply expert services "necessary" to an adequate defense;

15. Counsel failed to move the court as to a reduced charge of voluntary manslaughter, while court was in session, although counsel claimed that he did, during recess, and the judge denied his request. This occurred just prior to guilty plea being entered;

16. Counsel gave erroneous advice when he told plaintiff that the court would only allow the jury to consider "not guilty", "guilty", and "guilty but mentally ill" as the only verdicts, and counsel should have know that "not guilty by reason of insanity" should have been included or that plaintiff stood a good chance for a reversal on appeal. This erroneous advice coerced the plaintiff into pleading "guilty but mentally ill". Counselor [sic] was ineffective

when he allowed a plea of "guilty but mentally ill", without objection, when motions were before the court and were not ruled upon prior to the entering of the plea of "guilty but mentally ill";

17. Counsel failed to request the charge on murder v. manslaughter required by *State v. King;*

18. Denied due process of law—Plaintiff was denied "due process of law" as he was incompetent to stand trial and was not criminally responsible for his actions due to mental illness . . .;

19. Abuse of discretion—it was "abuse of judicial discretion" to allow plaintiff to stand trial for three gun charges that were brought to plaintiff's attention for the first time at his trial . . .;

20. *White v. State* Review—Plaintiff is seeking, and believes he is entitled to a "White v. State Review" so he may raise his appealable issues, as Plaintiff did not knowingly and intelligently waive his right to direct appeal. Rule 227(6) Appellate Court Rules;

21. Plaintiff contends that he is being held in custody illegally as he is unable to legally plead guilty but mentally ill, and he cannot be held responsible for his actions when he wasn't fully aware of what he was doing and did not have sufficient internal controls over his actions to conform them to the requirements of the law.

The Honorable Paul M. Burch held an evidentiary hearing in the matter on March 20, 1996, at which Petitioner was present represented by Michael Duncan, Esquire. Petitioner testified on his own behalf and also called his trial attorney to testify. After the hearing, Judge Burch issued an Order of Dismissal, dated April 26, 1996, dismissing the Application in its entirety. Petitioner filed a timely Notice of Appeal. On October 8, 1996, Petitioner's counsel, Lisa T. Gregory, Esquire, of the South Carolina Office of Appellate Defense, filed a *Johnson* Petition for Writ of Certiorari and Petition to be Relieved as Counsel which presented the following question:

Whether the lower court erred in denying the petitioner's application for post-conviction relief where there was testimony that the petitioner desired an appeal and counsel failed to file the necessary notice of intent to appeal.

By Order dated February 21, 1997, the South Carolina Supreme Court denied the petition and granted counsel's request to withdraw.

The petitioner filed his first federal habeas petition on August 4, 1997, C/A 4:97–2517–23BE. On November 3, 1997, Petitioner filed a motion to hold the matter in abeyance to allow filing of a second state PCR action to allege ineffective assistance of PCR counsel at the PCR hearing and on appeal. On March 26, 1998, then Magistrate Judge now District Judge, Margaret B. Seymour denied Petitioner's motion to stay. Petitioner then moved, on May 4, 1998, to dismiss his habeas petition without prejudice pursuant to Fed.R.Civ.P. 41(a)(2), and the Honorable Patrick Michael Duffy, United States District Judge, granted the motion and dismissed the petition on September 29, 1998.

On October 16, 1997, Petitioner filed a second PCR action in the state court and raised ineffectiveness of his PCR counsel and the alleged denial of a full and fair PCR hearing as well as several of the grounds that he had raised in the first PCR action. On June 19, 2000, the Honorable Lee S. Alford dismissed the second PCR action, finding that the petition was barred as successive and that Petitioner failed to present evidence to support his claim that his PCR attorney was ineffective for failing to present evidence that Petitioner was incompetent to proceed

with the PCR hearing. On May 11, 2001, the petition for a writ of certiorari from denial of PCR relief was dismissed without prejudice and remanded on Petitioner's motion to allow the PCR court to rule on a Rule 59 motion to reconsider he had filed. It appears that the Rule 59 motion has never been ruled upon, and that the petitioner did not renew his petition for a writ of certiorari from the denial of PCR relief.

Petitioner filed a second federal habeas action on May 26, 2000, and on August 28, 2000, Petitioner again moved for dismissal without prejudice. C/A 2–00–1578. On September 25, 2000, Judge Duffy again granted the motion.

Petitioner next filed a third PCR action on January 10, 2001, and alleged ineffective assistance of trial counsel, involuntary guilty plea, violation of due process rights, and that the Circuit Court lacked subject matter jurisdiction over his criminal case. An evidentiary hearing was convened on September 3, 2003, at which the Petitioner was present and represented by N. Douglas Brannon of the Spartanburg Bar. After hearing argument from the petitioner and his counsel, Judge Baxley found the matter was both successive and barred under the statute of limitations. (Baxley App. p. 61–62).

The petitioner appealed this denial to the South Carolina Supreme Court. In the appeal he was represented by Aileen Clare of the South Carolina Office of Appellate Defense. On March 18, 2004, she made a *Johnson v. State* [1] Petition for Writ of Certiorari raising as a sole ground that "the lower court erred by summarily dismissing petitioner's application for post-conviction relief." The Petitioner made a *Pro Se* Brief on appeal. On February 3, 2005, the South Carolina Supreme Court entered its order "after consideration of the entire record as required by *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988), we deny the petition and grant counsel's request to withdraw." The Remittitur was sent down on February 22, 2005.

This action was filed on April 28, 2005, and amended on June 27, 2005. The respondent moved for summary judgment on January 6, 2006. On January 9, 2006, the petitioner was provided a copy of the motion along with an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975). Thereafter, following an extension of time to respond, on March 8, 2002, the petitioner filed his opposition to the respondent's motion. Hence, it appears consideration of the motion is appropriate.

The respondents have attached and/or incorporated by reference the following materials.

A. From this Court's records in *Pettinato v. Bessinger*, 4:97–2517–23BE, Respondents request this Court to take judicial notice of its files pursuant to *Aloe Creme Laboratories, Inc. v. Francine Co.*, 425 F.2d 1295 (5th Cir.1970) of the exhibits filed by the Respondents therein, including, but not limited to: From the Return, the attachments from PCR Appeal—*Pettinato v. State* (Honorable Paul Burch) before the South Carolina Supreme Court;

1. Appendix to Petition for Writ of Certiorari (including guilty plea transcript; PCR application; State's Return; Amended PCR application; PCR hearing transcript; Order of Dismissal; SCDC and Clerk of Court records) (Two Volumes);

---

1. *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

2. *Johnson* Petition for Writ of Certiorari and Petition to be Relieved as Counsel, dated October 8, 1996;

3. Order of South Carolina Supreme Court denying certiorari, dated February 21, 1997.

From the July 7, 1998 Supplemental Return, the following documents,

1. *Pro se* letter dated October 17, 1996 received by the South Carolina Supreme Court on October 18, 1996.

2. October 24, 1996 letter from Clerk to Pettinato.

3. November 20, 1996 *pro se* letter (2 pages) received 11–25–96.

4. November 21, 1996 *pro se* letter (1 page).

5. November 25, 1996 letter from the Court acknowledging receipt of two letters.

6. April 3, 1997 *pro se* letter to Court.

7. April 7, 1997 response from Court.

A review of the public records of the Supreme Court of South Carolina revealed these matters were the documentation provided to the state court in the original PCR appeal.

B. From this Court's records in *Pettinato v. Anthony*, 2:00–1578–23AJ, Respondents request this Court to take judicial notice of its files pursuant to *Aloe Creme Laboratories, Inc. v. Francine Co.*, 425 F.2d 1295 (5th Cir.1970) of the exhibits filed by the Respondents in that action, including, but not limited to:

1. The bound EXHIBIT volume attached to the Return, including among other items, particularly,

A. Exhibit 8—*Pettinato v. State* PCR application, 97–CP–42–2649 (10 pages).

B. Exhibit 9—*Pettinato v. State*, 97–CP–42–2649, Order of Dismissal.

C. Respondents attach for the first time in these proceedings, the following

documents from the recent PCR appeal from Judge Baxley's denial:

1. Johnson Petition for Writ of Certiorari and Petition to be Relieved as Counsel, dated March 18, 2004.

2. Appendix to the Petition (BAXLEY) (76 pages), including application for PCR filed January 10, 2001, Return and Motion to Dismiss dated July 17, 2001, PCR hearing transcript of September 3, 2003, Order of Dismissal with Prejudice filed November 20, 2003, and Indictment 94–GS–42–3042.

3. *Pro Se* Brief and Exhibits.

4. February 3, 2005 Order of Supreme Court denying certiorari.

5. Remittitur Letter of February 22, 2005.

### *GROUNDS FOR RELIEF*

In the instant federal habeas corpus petition, the petitioner alleges the following grounds for relief:

I. Counsel failed to obtained a psychiatric expert to evaluate Pettinato on competency and criminal responsibility.

A. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel wherein counsel failed to obtain an expert in psychiatry to assist the defense with respect to Petitioner's competency to stand trial and sanity at the time of alleged offense after being requested to obtain same and when an expert was available and willing to assist Petitioner.

1. Based upon discussions with the Petitioner and receipt of mental health records, counsel was aware of Pettinato's mental health treatment from 1989 through the date of the incident.

2. Counsel was aware that counsel Michael Bartosh had made a motion to have Petitioner examined by the Depart-

ment of Mental Health for competency to stand trial and criminal responsibility.

3. Counsel learned that the state competency evaluations reports differed by the Petitioner's earlier treatment.

4. Counsel learned from the Petitioner's mother that she had retained a psychiatric expert.

5. Petitioner asked counsel to obtain an independent expert for an evaluation which was ignored.

6. Counsel failed to obtain an expert to evaluate both competency to stand trial and criminal responsibility [sanity] and to otherwise assist in the defense.

7. The Petitioner entered a guilty plea and waived his rights when he was not competent to plead guilty.

8. Counsel's failure to obtain a psychiatric expert also prejudiced his right to present an insanity defense.

II. Counsel's stipulation to competency to stand trial was not supported by evidence.

B. Petitioner's counsel provided ineffective assistance wherein counsel unreasonably stipulated to Petitioner's competency to stand trial and waived Petitioner's right to a full and fair competency hearing when the facts known to counsel raised a substantial question as to Petitioner's competency and there was a substantial doubt as to Petitioner's competency.

1. Trial judge found Pettinato competent to stand trial.

2. Counsel raised an issue as to competency after he had stipulated based upon a misunderstanding of the standard for competency to stand trial of having "absolutely no understanding whatsoever."

3. Although counsel was aware that the Petitioner had been found competent by State Hospital examiners four months earlier, after anti-psychotic medication, counsel was aware that he had stopped taking the medications and had difficulty understanding and remembering.

III. Counsel failed to provide the Petitioner with the results and file concerning the investigation.

C. Counsel provided ineffective assistance wherein he failed to conduct an adequate factual and legal investigation, failed to keep Petitioner fully informed, misled Petitioner, and withheld vital information from Petitioner.

1. Petitioner's counsel possessed prior counsel's files, which included State discovery material, police, ballistic, and GSR reports, correspondence, and medical records.

2. Counsel failed to share his file with the Petitioner or reveal to Petitioner exculpatory material or impeachment material.

3. Counsel failed to conduct further investigation based upon what he learned for the documents, insisting the only defense would be a defense of insanity.

4. Petitioner asserts he was prejudiced because receipt of the information would have caused him to revise his decisions concerning trial strategy, plea strategy, and would not have entered a GBMI plea to murder.

IV. Counsel failed to appeal or advise Pettinato of his appellate rights.

D. Counsel provided ineffective assistance wherein counsel failed to file an appeal, failed to inform Petitioner of the means and method for perfecting an appeal, and misled Petitioner concerning his appeal rights.

1. Prior to the plea, at trial, counsel indicated a desire to appeal.

2. The Petitioner agreed with counsel that an appeal should be taken.

3. Counsel never appealed or advised Petitioner how to appeal after his plea, when counsel knew he wanted to appeal.

4. Petitioner thought counsel would appeal and attempted to communicate with counsel about the appeal, but never received a response.

5. Petitioner attempted to appeal too late.

V. Claims concerning the inclusion of gun charges, the lack of a full competency hearing, the decision to testify, and the refusal to instruct on insanity and manslaughter.

E. Petitioner was denied his Sixth and Fourteenth Amendment rights.

1. Petitioner was informed by counsel of potential additional firearm charges two weeks prior to trial.

2. Counsel failed to share information with Petitioner from either the trial file or discovery.

3. Petitioner and counsel learned, at trial, about the two (2) additional indictments for use of firearm during a violent crime, without prior notice.

4. Counsel objected to the trial on the added charges on due process and jurisdictional grounds, which were overruled.

5. After the denial, he was arraigned on the charges, but was confused and lacked recall.

6. A competency hearing was held, where counsel stipulated to Petitioner's competency, no witnesses were called. He asserts he never waived his "right" for a full hearing on competency or to have a defense expert examine him.

7. Trial proceeded and counsel advised the jury Petitioner had committed the offense, but to consider his "state of mind" and insanity.

8. Counsel informed defendant that he was not receiving a fair trial and would appeal.

9. The trial judge intimidated the Petitioner by having a bailiff inform him that if he would "go off" he would be removed from the courtroom and be chained to a wall in the next room where he could hear the trial by intercom.

10. Petitioner asserts that state witnesses and friends of his wife made threats to him and his family which he overheard which intimidated him.

11. Petitioner thought his only choice was to testify to refute the state witnesses and find a way to admit he shot his wife to support insanity but he did not know what he was doing and relied upon news articles when he testified.

12. After the defense case, he learned the trial judge would not charge insanity or manslaughter, but only guilty, GBMI, and not guilty.

13. This failure to charge insanity deprived him of his right to present a defense.

14. He asserted that if he had a fair trial he would not have pled to murder, but insisted on the trial and appeal.

VI. Guilty plea not freely entered and based on ineffective assistance of counsel.

F. Petitioner's guilty plea violated Due Process because the plea was not entered knowingly, voluntarily and intelligently, was entered at a time that Petitioner was not legally competent and did not have an understanding of the consequences of the plea, was coerced, and, was entered because of the ineffective assistance of trial counsel.

1. Petitioner wanted to complete the trial and appeal rather than plead guilty.

2. Counsel advised him that he had two viable appellate issues in the court's

failure to instruct on insanity and manslaughter and pursuing the trial on the new gun charges.

3. Counsel advised him that if he entered a plea, he would testify for him in an appeal, one of the gun charges would be dismissed, he would be parole eligible with a life sentence for murder and a concurrent five (5) year sentence on the remaining gun charge and potential work release.

4. Counsel advised Petitioner that the plea offer could be revoked after the trial continued, but failed to provide advice on what he should do. Petitioner proceeded to enter the plea, so the case could be over with and the appeal process begin.

5. Petitioner asserts that he thought he could still raise the trial issues on appeal after his plea, that counsel would testify for him, and that counsel would be provided in the appeal.

6. He asserts that his denial of a fair trial based upon the testimony, the additional gun charges, the court's intent not to charge his defense, and his lack of psychiatric experts to support his defense coerced his plea.

7. He asserts he would not have pleaded guilty if counsel had not advised him he would appeal the case and testify for him.

VII. State PCR procedures arbitrarily and unreasonably foreclosed his right to litigate his claims.

G. Petitioner was denied Due Process wherein he was denied his right to a meaningful and fair post-conviction relief procedure in which to adequately and properly litigate his claims for relief because he was not competent, the State unlawfully interfered with his ability to prosecute his case, the State failed to follow its own procedures, and, the State arbitrarily and capriciously applied its laws to Petitioner.

1. At his March 20, 1996 PCR hearing, he was taken directly from his psychiatric treatment at Gilliam Psychiatric Facility where he was being treated with haldol, an anti-psychotic drug, for paranoia, suicide ideation and depression.

2. He was transported without his legal material and was not permitted to view or obtain copies of his trial case file, only informed he would have to get it from counsel.

3. He was not permitted to raise all his ground adequately.

4. He filed a second PCR action attempting to contend he was denied a full initial post-conviction relief hearing and that it was arbitrarily denied and dismissed.

5. He obtained his trial file May 11, 2000 that contained evidence to support his initial allegations and additional grounds.

6. He learned about exculpatory evidence, evidence to impeach, and other documents supportive of his defense.

7. He filed a third PCR action based upon this information which was arbitrarily denied based upon the State's successiveness rule and limitations.

### DISCUSSION

Dispositive of this entire habeas corpus petition is the fact that the instant § 2254 petition is untimely. Under the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214, a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Here, the petitioner's conviction became final prior to the enactment of the AEDPA and, thus, the limitations period would begin to run with the AEDPA's effective date, April 24, 1996. *See, Hernandez v. Caldwell,* 225 F.3d 435, 439 (4th Cir.2000). Accordingly, the limitations period expired on April 24, 1997, unless the period was at any time tolled for any properly filed state PCR application. 28 U.S.C. § 2244(d)(2). Here a properly filed PCR was pending until February 2, 1997, when the South Carolina Supreme Court denied the petition for a writ of certiorari in the first PCR action. Therefore, Petitioner had until February 3, 1998, to bring his federal habeas action,[2] unless the time was tolled by the proper filing of a state PCR.

A state application is "properly filed," for purposes of calculating time under the AEDPA, if it complies with state procedural requirements such as timeliness and proper place of filing. *See, Artuz v. Ben-*

*nett,* 531 U.S. 4, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000) ("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings … for example, the form of the document, the time limits on its delivery, the court and office in which it must be lodged, and the requisite filing fee.") *McSheffrey v. Angelone,* 172 F.3d 863 (4th Cir.1999).

Petitioner did file a state PCR before February 3, 1998, but that action was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) because it was untimely under South Carolina law. *See,* S.C.Code Ann. § 17–27–45(a) (setting forth one year statute of limitations for pursuing post-conviction relief) and *Peloquin v. State,* 321 S.C. 468, 469 S.E.2d 606 (1996) (statute of limitations begins on July 10, 1995, for convictions which became final prior to the date of the enactment of the PCR statute). Additionally, there is no South Carolina provision for tolling the South Carolina statute of limitations during the pendency of an earlier filed PCR action.

In short, since Petitioner's second PCR was time barred under South Carolina law, it was not properly filed and the federal statute of limitations continued to run while it was pending. Petitioner filed the instant habeas almost nine (9) years too late and this petition should be dismissed on that basis.

### CONCLUSION

Accordingly, because Petitioner has failed to file his Petition within the time period allowed under the AEDPA, it is

---

**2.** Petitioner did file a timely habeas corpus petition on August 4, 1997, but he voluntarily

dismissed that action on September 29, 1998.

recommended that the instant petition be dismissed.